Metropolitan Brick, Inc., Appellant, *v.* Bowers, Tax Commr., Appellee.*

(No. 2941—Decided December 14, 1961.)

*Mr. Albert R. Arbaugh* and *Mr. Maurice W. Wendling*, for appellant.

*Mr. Mark McElroy*, attorney general, and *Mr. John J. Lokos*, for appellee.

Rutherford, J. This is an appeal by Metropolitan Brick, Inc., under the provisions of Section 5717.04, Revised Code, from a decision of the Board of Tax Appeals, so far as that decision affirmed the final order of the Tax Commissioner, which determined that tile trays, dividers or separators and cartons purchased and used by appellant during the period from February 14, 1956, to December 31, 1958, were subject to Ohio sales or use taxes and assessed the tax, which appellant has not paid.

The appeal before the Board of Tax Appeals was heard upon the statutory transcript supplied by the Tax Commissioner, the oral testimony of Ralph G. Sterling, vice president and production manager of appellant, and upon exhibits offered by appellant. At this hearing before the Board of Tax Appeals appellant conceded that sales or use tax was properly assessed against appellant upon materials specifically purchased and used by appellant for transportation of the finished product. Such materials consisted of creased sheets, doubleform pads, packers

*Motion to certify the record overruled (37434), May 9, 1962.

and steel strapping, all of which were used to prepare appellant's product for shipping.

The Tax Commissioner, on the other hand, conceded that appellant's purchases of 42″ by 48″ cardboard sheets were improperly subjected to sales taxation, because such sheets were used and consumed by appellant in the course of, and directly in, the manufacturing of its tile for sale.

The Metropolitan Brick, Inc., is engaged in the manufacture of paving brick, structural glazed tile and glazed brick. The only product manufactured for sale by appellant which is involved in this appeal is structural glazed wall tile, manufactured at appellant's plant in Minerva, Ohio. This glazed wall tile is a load-bearing structural unit of which one, or sometimes two or three, surfaces are faced with a glaze. It is manufactured from raw materials consisting of ground clay, mixed with water, and then extruded into the desired shape. The extruded shapes are then placed on a drier car and subjected to heat in a forced heat drier for about 72 hours. The glaze is then applied by spraying and the glazed forms are stacked on a kiln car with sharp sand between the pieces to keep them apart and avoid chipping.

In the continuous kiln the glazed forms are fired and burned at about 2000 degrees fahrenheit. It takes about three and one-half days for the kiln car to pass from the charging end to the exit end of the kiln. This firing or burning fuses the glaze into the burned clay forms and makes the unit into glazed tile.

Upon the kiln car leaving the kiln, it is moved up to the inspectors or drawers, who inspect each piece, throwing the defective or chipped pieces into scrap and placing three of the select or good tiles into a cardboard tray having a bottom and three sides, but no front or top and the three tiles therein are kept apart in the tray by pieces of cardboard known as dividers or separators. This packaging prevents chipping or damaging in handling. The packaged units are then stacked upon pallets for storage or shipping. When they are to be shipped they are moved by lift truck to the place where creased sheets or pads are put along the edges of the top layer on the pallet and steel straps are placed around the pallets so that they may be handled by lift truck into railroad cars or onto motor trucks for shipment. As previously stated, it has been conceded that the pallets,

creased sheets or pads, and steel strapping are used in transportation rather than in production and are taxable. Upon receipt by the customer or consumer, in 90 percent of the cases, the three individual glazed tile remain in the tile tray, with dividers or separators between them and the edges of the trays and the dividers extending above the top surface to protect the glaze until the tile are removed from the package by the bricklayer to lay them in a wall.

As a part of the process of inspecting and removing the tile from the kiln car, protective packaging is very necessary because the edges of the glazed surfaces are very susceptible to chipping and marring, and a chip or defect noticeable at a five foot distance causes the piece to become a reject or scrap. While in the kiln and on the kiln car the tile have been separated and protected by sharp sand.

In addition to the 5-inch by 12-inch units, the appellant also manufactures a larger tile called the "W" series. Of these, the select or good tile are removed from the kiln cars by the inspectors and placed on skids in layers, each layer being separated from the one next above by a 42″ x 48″ corrugated sheet. The purpose of this sheet is to protect glazed surfaces from chipping while being placed on the skid and while the loaded skid is moved to a sizing machine. As noted before, the Tax Commissioner has conceded that the 42″ x 48″ corrugated sheets are not subject to sales taxation. At the sizing machine, the select or good tile of the "W" series are ground to exact and uniform size by passing them through the machine, after which each individual unit is again inspected, and those which meet specifications for select tile are placed in an individual protective package or carton.

In years past other means of protecting the glazed surfaces were tried, such as putting a rubber strap around the glazed edges, putting gummed paper on each piece and by putting each individual tile even of the small size in an individual protective package, but the present method was developed to reduce cost. It has not been tried but consideration has been given to spraying the tile with a rubberized material.

The only items in question are the tile trays, dividers or separators used to package the smaller tile three to a unit, and the cartons used to package the larger tile one in each carton, purchased and used between February 14, 1956, and December

31, 1958. The decision of the Board of Tax Appeals subjects these items to sales taxation, for the period subsequent to repeal of rule 100, by the Tax Commissioner on February 14, 1956. For the period prior to February 14, 1956, exemption was granted under rule 100 as adopted by the Tax Commissioner and no tax assessed.

Rule 100, while in effect, provided:

"Sales of packing or wrapping materials and containers to be used in packing, wrapping or crating tangible personal property which is sold in an established business, are not taxable. Such packing or wrapping materials include crating materials used in packing tangible personal property for shipment."

The question before this court is: Was the decision by the Board of Tax Appeals which held these tile trays, dividers and cartons purchased and used by the appellant, during the period from February 14, 1956, to December 31, 1958, to be subject to Ohio sales or use taxes, unreasonable or unlawful?

Section 5739.02, Revised Code, provides for an excise tax to be levied on each retail sale made in this state of tangible personal property, and provides for certain exemptions, none of which exemptions is applicable in the case before us.

Section 5739.01, Revised Code, so far as material provides:

" 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"(1) * * *

"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, refining, or mining * * *."

The use tax statutes contain substantially similar provisions.

In the case of *Hercules Galion Products, Inc.,* v. *Bowers, Tax Commr.,* 171 Ohio St., 176, the Supreme Court of Ohio said:

"The entire structure of the Department of Taxation and the Board of Tax Appeals, of necessity, requires some measure of finality in the Board of Tax Appeals.

"In a long line of cases this court has laid down certain rules in an attempt to define the words, 'used directly in manu-

facturing,' etc. Having done so it must repose in the administrative appeal board the power to apply those rules to the different factual situations as they arise. It is not the function of this court to substitute its judgment for that of the Board of Tax Appeals on such factual issues but only to determine from an examination of the record whether the decision reached by the board is unreasonable or unlawful.''

We are well aware of why the Supreme Court of Ohio made this declaration, but it still leaves us in the position of being unable to affirm the decision of the Board of Tax Appeals unless we can go further and say that the decision is not unreasonable or unlawful in view of the applicable statutory provisions and in view of those provisions as their application has been determined by the Supreme Court in the long line of cases laying down the rules.

There really is no dispute as to the facts in this case. The dispute arises from the interpretation of those facts under the law, i. e., the application of the law to the facts.

The appellant for assignment of error said: The decision of the Board of Tax Appeals that said trays, dividers and cartons were not used or consumed directly in the manufacture of glazed tile and are subject to and not exempt from Ohio sales and use tax is unreasonable and unlawful. Further appellant says it was unreasonable and unlawful not to exempt these items from sales and use tax under the decision of the Supreme Court of Ohio in *Kroger Grocery & Baking Co.* v. *Glander, Tax Commr.*, 149 Ohio St., 120.

In the *Kroger case* the Supreme Court held, in paragraph two of the syllabus:

''Sales of wrapping materials, cartons and containers properly and necessarily used and consumed in producing, processing, manufacturing and preparing in suitable condition for market and sale food products to be sold at retail are within the exceptions in the Sales Tax Act and the Use Tax Act and are not taxable.''

Rule 100 of the Tax Commissioner also provided for the exception granted in the *Kroger case*, but it is our interpretation that the court's finding was that the items were not taxable because while excepted by rule 100, they were also excepted from the definition of retail sales by the statutory provision inde-

pendent of rule 100. Had this not been the case we would doubt the validity of the rule for while by statute the Department of Taxation had the power to adopt and promulgate such rules and regulations as it might deem necessary to carry out the provision of the act, we do not believe such power to contemplate the right to impose a tax or to grant an exclusion from tax not provided by the statute.

As does the appellant in the instant case, Kroger claimed that its wrapping materials and containers are necessarily and directly used and consumed before ultimate transportation to its retail stores is begun. Kroger claimed, as does appellant, that the wrappings and containers are necessarily and indispensably used and consumed in conserving and handling the product contained in them and in making the shipment thereof possible (See page 128 of opinion). Among the many Kroger items were mats for candy boxes, frozen egg cartons, etc., as enumerated in the court's opinion.

The Sales Tax Act has been before the Supreme Court in many instances since the decision in the *Kroger case* was rendered but in no case has the *Kroger case* been overruled.

Appellee relies strongly upon the case of *United Steel Corp.* v. *Bowers, Tax Commr.*, 170 Ohio St., 558. In that case the Supreme Court stated:

"The sale or use of transportation equipment, no matter how necessary or essential to an industry, is excepted from the operation of the sales and use tax laws only when it is used during the processing or manufacturing."

The item in question in the *U. S. Steel case* was blocking lumber used by the taxpayer in transportation of its finished products. In its opinion (page 563) rendered May 4, 1960, long after rule 100 had been repealed, the court said:

"Here we are faced with a problem different from that presented in the *Kroger case*. The lumber used in the present case is not wrapping materials, etc., necessarily used and consumed in producing, processing, manufacturing and preparing in suitable condition for market and sale. The steel is ready for the market in the instant case before the lumber is used. It is not wrapping, etc., but shoring placed on the carrier to comply with the carrier's regulation relating to the transportation of products such as those of the taxpayer."

In *Youngstown Building Material & Fuel Co.* v. *Bowers, Tax Commr.*, 167 Ohio St., 363, the court said the test to be applied is:

"*When* does the actual manufacturing and processing activity begin and end, and is the property used or consumed *during and in the manufacturing or processing period?*"

The issue in the case before us relates to the "direct use" formula as it applies to packaging and protective materials. After considering all the Supreme Court cases, including the *Kroger case*, we conclude the rule to be, that packaging and protective materials are used or consumed directly in the production of personal property for sale by manufacturing or processing if they are necessary in preparing the product in a suitable condition for market and sale. Further, if they are so necessary it is immaterial that they may also have an incidental use for transportation purposes. See *Mead Corp.* v. *Glander, Tax Commr.*, 153 Ohio St., 539, paragraph two of the syllabus:

"Where equipment is employed primarily in a way which excepts its purchase from the sales and use tax, its incidental use otherwise will not destroy such excepted status."

In levying, respectively, sales and use taxes, the presumption obtains that every sale or use of tangible personal property in this state is taxable. Statutes relating to exemption or exception from taxation are to be strictly construed, and one claiming such exemption or exception must affirmatively establish his right thereto. *National Tube Co.* v. *Glander, Tax Commr.*, 157 Ohio St., 407.

The evidence in this case was that it became necessary to protect the tile from the instant the glaze was applied. At this point it was first protected by being separated by sharp sand when placed on the kiln car and while being run through the kiln. Upon coming out of the kiln, protective packaging to avoid chipping was still necessary in order to remove the tile from the kiln car, part of which were packaged three to a unit with dividers for handling and protection and as to part of which continuous separation and protection was provided by the 42″ x 48″ cardboard sheets when they were placed on skids until run through the grinder, from which these tile were placed into individual protective packages. The evidence further was that

subsequent to transportation, for which items conceded not to be exempt are used, the tile remain in the cartons for handling and protection until placed in the wall by the mason.

Probably many of the items in the *Kroger case* are placed in the protective packaging by automation, rather than by drawers performing the operation by hand as in this instance. However, in view of the destructibility of the product and the necessity of protective packaging, both before and after transportation, we believe appellant has assumed the burden of affirmatively establishing that the containers and dividers are used, or consumed directly in the production of personal property for sale by manufacturing, in that they are necessary in preparing the product in a suitable condition for market and sale, and that their use and requirement in transportation is incidental thereto.

In our opinion the exceptions granted in the *Kroger case* were not because the items marketed were food, but rather because the wrapping materials, cartons and containers were properly and necessarily used and consumed in producing, processing, manufacturing and 'preparing in suitable condition for market and sale. We are unable to distinguish between the containers used for the frozen eggs, mats for candy boxes, etc., and the containers used in the instant case because the glazed surfaces are fragile. The consumer would no more want to purchase the tile without necessary packaging to afford handling without chipping than he would the eggs or candy without necessary protective packaging.

It follows that in our opinion it would be discriminatory to allow the exceptions from tax provided for by the rule in the *Kroger case* to the items as therein excepted and to deny the exception from retail sale and sales or use tax as to the containers and dividers in the instant case when the use is likewise necessitated in producing, processing, manufacturing and preparing the product in suitable condition for market and sale.

To assess a sales tax upon that which is excepted from the definition of a retail sale by the statute defining a retail sale is not only unreasonable but unlawful. This would also be true as to the assessment of a use tax under like circumstances.

While we have been able to distinguish other cases cited by appellee, in applying the statutory definition of a retail sale as

construed under the rule of the *Kroger case*, we find upon the evidence as contained in the record that in this case appellant has affirmatively shown the items in question to come within the exception so provided.

In conclusion, from an examination of the entire record, we find that part of the decision of the Board of Tax Appeals from which this appeal was taken to be both unreasonable and unlawful. Therefore, the decision as it relates to and assesses a sales or use tax upon the cartons or trays and dividers here in question is reversed, with final judgment to be entered finding and adjudging said cartons or trays and dividers as used by appellant to package glazed tile during the period from February 14, 1956, through December 31, 1958, not to be subject to Ohio sales or use taxes.

*Decision reversed and judgment accordingly.*

McLAUGHLIN, P. J., concurs.

McCLINTOCK, J., dissenting. It is my opinion that the decision of the Tax Commissioner made in the within case is not illegal or unreasonable, and that the tax should be upheld, as was shown by the evidence in the record.