Zimmerman, J.
 

 The Mead Corporation has filed an appeal in this court, under Section 5611-2, General Code, from a decision of the Board of Tax Appeals, in which appeal the appellant complains that the board acted unreasonably and unlawfully in affirming final orders of the Tax Commissioner assessing a sales or use tax on certain purchases of tangible personal property made by appellant’s Chillicothe division during the years 1944 to 1947, inclusive.
 

 This is another of the cases coming from the Board of Tax Appeals in which, under existing statutes, this
 
 *540
 
 court is called upon to assume the role of a second administrative board of review and is required to pass largely on questions of fact.
 

 Directly involved herein are parts of Sections 5546-1 and 5546-25, General Code.
 

 As it affects this case, Section 5546-1, General Code, provides:
 

 “ ‘Retail sale’ and ‘sales at retail’ include all sales excepting those in which the purpose of the consumer is * * * (b) to incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing
 

 Section 5546-25, General Code, recites,
 
 inter
 
 alia:
 

 “ ‘Use’ means and includes the exercise of any right or power incidental to the ownership of the thing used, excepting as hereinafter provided.
 

 “When the purpose of the consumer is * * * (b) to incorporate the thing purchased as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing * *
 

 The record discloses that appellant is engaged in the manufacture of white paper from wood, and its various processes require the use of many materials and devices over a rather extensive plant. The method of operation is substantially as follows:
 

 Logs are brought into the plant and are stored for seasoning in a so-called woodyard. In this woodyard, after sufficient seasoning, the logs are prepared for what is known as the chipper. Chipping is one of the
 
 *541
 
 steps incident to transforming wood into pnlp. After going through the chipper the wood is cooked. The resulting pulp is then bleached and is ready to go into the beaters for the blending necessary in the ultimate production of paper. Some of the pulp utilized by the appellant is purchased and stored in what is designated as the strawshed and here the various types of pulp are kept and from time to time are selected and transferred to the beaters in response to orders from the beater room.
 

 In the business of manufacturing paper, the appellant employs transportation facilities such as a diesel electric locomotive, motor trucks, cranes and various smaller tools.
 

 The Board of Tax Appeals in its decision took “the view that appellant’s operations can be divided into two main operations, namely,
 

 “(1) Manufacturing paper for sale by processing wood pulp.
 

 “(2) Storing raw materials and transporting raw materials from storage to the place where the manuture of paper begins.
 

 “And the board is of the view that all tools and items of equipment used and consumed in operation (1) are exempt from sales and use tax, and that all tools and items of equipment used and consumed in operation (2) are subject to said tax.”
 

 It will thus be seen that the board assumed the position that, although all equipment placed in category (2) was used in appellant’s general operations, it was not used directly in the production of tangible personal property for sale and its purchase was therefore subject to the sales and use tax.
 

 It is the contention of appellant that the equipment and devices placed by the board in its second category are in fact used directly in the production of tangible
 
 *542
 
 personal property for sale by manufacture and the purchases thereof were thus excepted from the sales and use tax.
 

 The argument is sometimes advanced that the purchase of equipment used in the manufacturing process and which does not itself become a part of the finished product is subject to the sales and use tax. An examination of Sections 5546-1 and 5546-25, General Code, convinces a majority of the court that such argument is not tenable. In these statutes an exception is first made as to those materials which are actually incorporated in the finished product, and then follows the provision that the sale of a thing used or consumed directly in the production of tangible personal property for sale shall also be excepted. Surely such latter expression must refer to equipment employed in producing the tangible personal property mentioned in the first part of the exception. Otherwise the second part of the exception provision is meaningless and must be treated as mere surplusage. It has been held in several decisions of this court that the purchases of equipment utilized in the production of tangible personal property for sale are not taxable.
 

 For the purpose of simplification the parties have placed the items in dispute under several separate headings. The first is denoted “woodyard. ” Here the wood used by appellant in manufacturing paper is not only stored and seasoned but is prepared for the chipper. Processing therefore begins in the wood-yard, and, within the decision of this court in
 
 Dye Coal Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 233, 58 N. E. (2d), 653, the purchase of the tools, accessories and certain parts employed in this step of manufacturing, and the purchases of the trucks used to transport the wood to the chipper are excepted from the sales and use tax.
 

 
 *543
 
 Next is “locomotive and yard transportation.” Principally involved is a diesel electric locomotive. In affirming the orders of the Tax Commissioner, the board agreed with the commissioner by determining that 25 percent of the nse of the capital equipment embraced in this classification was nontaxable and that 75 per cent thereof was. It is the attitude of the board that the locomotive with boxcars was engaged principally in the transportation of materials, including wood pulp from the strawshed to the beater rooms, and that the transportation being solely such, exception from taxation could not be claimed successfully.
 

 However, the record shows that in the strawshed occurred the selection and loading of pulp of various types as ordered by those in charge of the beater room. It would thus seem apparent that the operations conducted in the strawshed were a step in the preparation and processing of materials for the production of paper, and, this being so, the purchases of the transportation equipment utilized in moving materials upon which processing had begun from one part of the plant to another for further processing would be brought within the exception provisions of the sales and use tax statutes in accordance with the holdings of this court in
 
 France Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 455, 55 N. E. (2d), 652, and
 
 Dye Coal Co.
 
 v.
 
 Evatt, Tax Commr., supra.
 

 Where equipment is employed principally in a way which excepts its purchase from the sales and use tax, its incidental use otherwise will not destroy such excepted status.
 

 The general rule is that “it is the primary, as distinguished from an incidental, use of the property that determines the question whether it is exempt from taxation.” 61 Corpus Juris, 402, Taxation, Section 405. See, also, 2 Cooley on The Law of Taxation (4
 
 *544
 
 Ed.), 1432, Section 685;
 
 Sanitary District of Chicago
 
 v.
 
 Rhodes, County Collector,
 
 386 Ill., 269, 53 N. E. (2d), 869;
 
 Brockton Knights of Columbus Building Assn., Inc.,
 
 v.
 
 Assessors of Brockton,
 
 321 Mass., 110, 72 N. E. (2d), 406;
 
 President and Fellows of Middlebury College
 
 v.
 
 Town of Hancock,
 
 115 Vt., 157, 55 A. (2d), 194.
 

 Moreover, this court has said in effect that there is no authority for the splitting of a piece of property owned by one person for the purpose of taxation, so that one part will he exempt from taxation and the other part nonexempt.
 
 Welfare Federation of Cleveland
 
 v.
 
 Glander, Tax Commr.,
 
 146 Ohio St., 146, 177, 64 N. E. (2d), 813, 826.
 

 Another division made by the parties is “straw-shed crane.” The crane in issue was used to unload the wood pulp as it arrived at the plant and stack it according to type; later the crane was employed in selecting and sorting the pulp in response to orders received from the beater room. Since in the opinion of a majority of the court such selecting and sorting were a part of processing, the purchase of such crane was excepted from the sales and use tax.
 

 The remaining classification set up by the parties is “locomotive crane.” This crane was used generally to unload coal from coal cars, place it in stock piles and move it around the yard, when deemed expedient, to decrease the hazard of fire. It appears further that appellant uses various types of coal for different purposes in running its plant and that the crane is also employed in arranging and blending the coal according to needs. Although the locomotive crane undoubtedly serves a valuable purpose in the conduct of appellant’s business it is not used directly in the process of manufacturing paper and under the recent decision of this court in
 
 Tri-State Asphalt Corp.
 
 v.
 
 Glander, Tax Commr.,
 
 152 Ohio St., 497, 90 N. E. (2d), 366, its sale was not excepted from taxation.
 

 
 *545
 
 It follows that the decision of the Board of Tax Appeals is reversed in part and affirmed in part as indicated in this opinion.
 

 Decision reversed in part and affirmed in part.
 

 "Weygandt, C. J., Matthias, Hart and Stewart, JJ., concur.