Weygandt, C. J.
The sole question before this court is whether the sales of the materials used and consumed in the construction of the passenger station and the approaches thereto are subject to the sales and use taxes defined in Sections 5456-1, General Code (Section 5739.01, Revised Code), and 5546-25, General Code (Section 5741.01, Revised Code).
Fortunately the controlling facts are not in dispute. They were summarized by the Board of Tax Appeals as follows:
“The depot has two floors — one at street level, the other at track level. Its functions are convenience of the traveling public, handling passengers ’ baggage and United States mail. No freight passes through this building. The street level floor contains a ticket office, an office of the division passenger agent, a waiting room, rest rooms, public telephones and parcel lockers. The track level floor contains a space for storage of passengers’ valuables, an express room, a place for sorting mail, a baggage room, and heater space from which the building is heated, and passenger toilets. Loading platforms for passengers, mail, express and baggage extend along the track. A covered ramp extends from the depot building across the tracks from which passengers descend and ascend by steps and escalator to the loading platforms. No equipment is contained within the structure which plays a part in the operation of appellant’s six passenger trains which operate daily over its'tracks under the ramp.”
Under the common provisions of the two statutes, the specific question is whether the materials were used or consumed “ directly in the rendition of a public utility service.” (Italics supplied.) The source of the entire difficulty is the adverb “directly.” In its application of this language, the Board of Tax Appeals made the following comment:
“No doubt can exist of the fact that construction *324 and use of this building is of advantage to Erie and its passengers. It expedites the handling of baggage, express, mails and conveniences passengers. It facilitates their transportation system, just as a typewriter in its offices facilitates its paper work. The business of railroads in early days was the transportation of passengers and freight. Little or no heed was paid to a passenger’s convenience. The prime essentials were rights of way, roadbeds, ties, rails and rolling stock, which were indispensable to produce transportation. Later expansion required and made necessary other things such as signaling devices, switching equipment, guards, crossovers, third rails, overhead wires and other like equipment. If one even now goes into the wilds of Canada, railroads may be found where passengers and freight are loaded and unloaded where trails intersect and no convenience save a small platform exists. As transportation grew the states entertained an idea that transportation companies served the public and that they owed some duty to their patrons. Legislative requirements resulted. This, together with carriers’ competition, and their own convenience, brought about the erection of stations which provided waiting rooms, toilets, heating facilities and other facilities now found in railroad stations for their own and their patrons’ convenience. Without these conveniences the business of transportation could and does still go on. These conveniences, without question, facilitate the business of transportation. They expedite it and make it attractive to the public, but do not enter into the act of transportation itself.”
Both counsel comment at length on the decision of this court in the case of Athens Rome Telephone Co. v. Peck, Tax Commrs., 158 Ohio St., 557, 110 N. E. (2d), 571. This case is not mentioned in the opinion of the Board of Tax Appeals. The obvious reason for this is that the board announced its decision on January *325 26, 1953, while the decision of this court in the Athens case was not announced until February 11, 1953.
Paragraph two of the syllabus in the Athens case reads:
“2. Specially designed and equipped motor vehicles indispensable and used exclusively for keeping a public telephone or electric system in continuous operation and repair are used ‘directly in the rendition of a public utility service.’ ”
In the opinion in that case, comment was made on the difference in the significance of the statutory language relating to material used or consumed “directly in the production of tangible personal property for sale” and that used or consumed “directly in the rendition of a public utility service.” There is nothing in the context to indicate that the General Assembly intended to use the two expressions synonymously; and in their ordinary acceptation the broader words “rendition of * * * service” mean something different from “production of * * * property.” This was observed in the opinion in the Athens case.
The only decision of this court mentioned by the Board of Tax Appeals in its opinion is that in the case of Fyr-Fyter Co. v. Glander, Tax Commr., 150 Ohio St., 118, 80 N. E. (2d), 776. The question there involved related to production of property and not to rendition of service. The same is true of the case of Mead Corp. v. Glander, Tax Commr., 153 Ohio St., 539, 93 N. E. (2d), 19, also relied on by the appellee.
Were the materials which were fabricated into the appellant’s passenger station and its approaches used or consumed “directly” in the rendition of a public utility service?
This question is illustrative of the fact that adjectives and adverbs seem to be the chief trouble makers in problems of statutory construction for the obvious reason that they may mean one thing to one mind and *326 something different to another. So here the word “directly” is applied by the appellant and the appellee to the instant facts with opposite results.
The appellee agrees that the appellant’s passenger station is convenient and facilitative to its transportation service but insists that the station is not indispensable thereto.
The appellant, however, insists that such a station is necessary in order to provide information for passengers, to make reservations, to sell tickets, to handle baggage, to provide shelter from the weather, and to furnish a safe place for .passengers to board and leave trains. Apparently the Public Utilities Commission of Ohio was of the same view inasmuch as it ordered the appellant to construct a passenger station. Then, • too, the General Assembly in Section 504, General Code, Section 4907.24, Revised Code, has provided that in rendering public utility service ‘ ‘ each railroad shall furnish reasonably adequate service and facilities.” In Section 519, General Code (Section 4907.39, Revised Code), it is provided that “each railroad shall provide and maintain adequate depots and depot buildings at its regular stations for the accommodation of passengers. Such depot buildings shall be kept clean, well-lighted, and warmed, for the comfort and accommodation of the traveling public.” Likewise, in Section 8926, General Code (Section 4963.02, Revised Code), it is provided further that “every person, firm, or corporation operating a railway wholly or in part within this state shall provide a suitable waiting room for the use of the traveling public at each station where a passenger train of the railroad is regularly scheduled to stop. Such room shall be so maintained and kept as to be conducive to the comfort and health of the patrons of the railroad.”
These statutes are not mentioned in the opinion of the Board of Tax Appeals or in the brief of the ap *327 pellee. This court does not regard these provisions as conclusive of the question here presented, but it does consider these expressions of the General Assembly and the Public Utilities Commission as of some evidentiary value in determining whether a passenger station is necessary and used directly in the rendition of public utility service by a railroad under present day conditions. This court finds itself in agreement with these views.
The decisions of the Board of Tax Appeals are reversed.

Decisions reversed.

Middleton, Zimmerman and Stewart, JJ., concur.
Taft and Lamneck, JJ., not participating.