CANTON MALLEABLE IRON Co., APPELLEE, *v.* PORTERFIELD,
TAX COMMR., APPELLANT.

[Cite as Canton Malleable Iron Co. v. Porterfield
(1972), 30 Ohio St. 2d 163.]

(No. 71-671—Decided May 24, 1972.)

*Messrs. Dargusch & Day* and *Mr. Roger F. Day,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Peter A. Stratigos,* for appellant.

HERBERT, J. This case involves a claimed exception from Ohio's tax on sales of tangible personal property at retail. R. C. 5739.02, which provides for the levy of the tax, states, in part:

"For the purpose of providing revenue * * * an excise tax is hereby levied on each retail sale made in this state."

R. C. 5739.01, a definitional section, provides, in part:

"(E) 'Retail sale' * * * include[s] all sales except those in which the purpose of the consumer is:

"* * *

"(2) * * * to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing * * *.

"* * *

"(S) 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."

The question presented to this court is whether the system heretofore described, and, therefore, parts necessary for its repair, are excepted from the sales tax of R. C. 5739.02 by reason of R. C. 5739.01(E)(2) and (S).

The Ohio retail sales tax act was first enacted in 1934 (H. B. No. 134, 115 Ohio Laws, pt. 2, 306) as a temporary emergency measure. In its original form, it defined the subjects of taxation as:

"* * * all sales excepting those in which the purpose of the consumer is * * * (b) * * * to use or consume the thing transferred in manufacturing * * *."

That language excluded certain transactions in which the purpose of the buyer was to use the purchased item in the production of other tangible personal property for sale.[1]

In 1935, the General Assembly amended that section of the statute. (H. B. No. 572, 116 Ohio Laws, pt. 2, 69, 70) to read:

"* * * all sales excepting those in which the purpose of the consumer is * * * (b) * * * to use or consume the thing transferred *directly* in *the production of tangible*

---

[1] Ohio Tax Study Commission Report (1967), "The State and Local Tax Structure of Ohio," at page 283.

*personal property for sale by* manufacturing * * * process-
ing * * *.'' (Emphasis added.)

The amendment qualified the use exclusion with the
word "directly." The effect was to change the exclusion
from one involving property used or consumed in certain
industries, to one involving property used or consumed in
a certain manner in certain industries. The result was a
broadening of the tax base.[2] In that form, the tax was
made permanent in 1936 (H. B. No. 694, 116 Ohio Laws,
pt. 2, 323) as Section 5546, General Code, and specifically as
Sections 5546-1 and 5546-2.

Over the years, this court has often stated that statutes
relating to the exemption or exception from sales or use
taxes are to be strictly construed, and that one claiming
such exemption or exception must affirmatively show his
right thereto. *Celina Mutual Ins. Co.* v. *Bowers* (1965), 5
Ohio St. 2d 12, 213 N. E. 2d 175. See, also, *Ohio Ferro-
Alloys Corp.* v. *Donahue* (1966), 7 Ohio St. 2d 29, 218 N. E.
2d 452; *L. A. Wells Construction Co.* v. *Bowers* (1955),
164 Ohio St. 357, 130 N. E. 2d 803; *Standard Oil Co.* v.
*Peck* (1955), 163 Ohio St. 63, 125 N. E. 2d 342; *B. F. Good-
rich Co.* v. *Peck* (1954), 161 Ohio St. 202, 118 N. E. 2d 525;
*National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407, 105
N. E. 2d 648; *Pioneer Linen Supply Co.* v. *Evatt* (1946),
146 Ohio St. 248, 65 N. E. 2d 711; *State, ex rel. Foster,* v.
*Evatt* (1944), 144 Ohio St. 65, 56 N. E. 2d 265; *State, ex
rel. Keller,* v. *Forney* (1923), 108 Ohio St. 463, 141 N. E.
16. As we said in *B. F. Goodrich Co.* v. *Peck, supra,* at 207,
208:

"* * * the reason for applying such a rule * * * [is]
the * * * 'presumption * * * that every sale or use of
tangible personal property in this state is taxable.' " (G.
C. 5546-2 and 5546-26, now R. C. 5739.02 and 5741.02.)
Clearly, strict construction was to be made against excep-
tion from taxation.

In that light, prior opinions of this court have dis-

---

[2]*Ib.*

cussed the development of the exception for "direct use" in the production of tangible personal property for sale by manufacturing, etc., and problems associated with its interpretation and application. In each of those instances, this court was asked to determine what the General Assembly meant by the word "directly"; whether, in a particular case, there was a direct use of the item whose sale or use was claimed excepted from the sales or use tax. Because the answers to that question often turned, of necessity, on factual grounds, a certain degree of misunderstanding arose wherein our decisions were frequently looked upon as completely "*ad hoc* determinations based on the facts presented in each particular case." *Orr Felt & Blanket Co.* v. *Schneider* (1965), 3 Ohio St. 2d 14, 22, 209 N. E. 2d 150. As stated in *Powhatan Mining Co.* v. *Peck* (1953), 160 Ohio St. 389, 393, 116 N. E. 2d 426:

"What may appear to one person to be a direct use in a particular case may appear to another equally intelligent and reasonable person not to be a direct use. This probably explains many of the differences of opinion which have been exhibited by the decisions of this court in determining whether, in a particular case, a direct use was or was not involved. * * *"

However, we cannot allow answers to questions as to whether a direct use is involved to be dependent only upon the facts and circumstances of each case, without reference to prior decisions rendered in other related cases. To do so would contribute to the confusion caused by the use of ambiguous statutory wording such as "directly." As we also said in *Powhatan*, at page 394:

"* * * Our aim should be to remove that ambiguity. This can only be done by endeavoring to make each decision rendered consistent with previous decisions rendered. The results may be what will seem to reasonable and intelligent persons to represent the drawing of artificial and arbitrary boundaries or lines. However, such boundaries or lines should be helpful as a guide to those charged with the administration of the tax laws and to members of the

bar, who must advise their clients as to the meaning of those laws."

From 1935 to 1962, while the "direct use" exception remained in effect, our decisions recognized and attempted to effectuate that aim.

In *Saunders Mills* v. *Evatt* (1942), 139 Ohio St. 227, 39 N. E. 2d 526, we held that motor trucks purchased in Ohio for employment solely in transporting agricultural produce were not used "directly in the production of tangible personal property for sale by manufacturing, processing * * * within * * * Section 5546-1, General Code."

In *Fyr-Fyter Co.* v. *Glander* (1948), 150 Ohio St. 118, 122, 124, 80 N. E. 2d 776, we said that when the General Assembly inserted the word "directly" into the exception it meant to narrow it, and that "directly" was *the* crucial word in the exception. So crucial, in fact, that we held "the fact that certain items of tangible personal property are required by law in * * * operations does not in and of itself exempt or except from taxation the sale or use of such items for such purpose," and without "inquiry being made as to their direct or indirect use."

In *Tri-State Asphalt Corp.* v. *Glander* (1950), 152 Ohio St. 497, 501, 90 N. E. 2d 366, we stated:

"When the General Assembly excepted from taxation the sales of those things which were to be used or consumed directly in the production of tangible personal property for sale by processing, it had in mind only such articles as had a direct part in the processing. *Sales of* instrumentalities of transportation and other articles or *things which are necessary to carry on the business of processing, but which themselves have no part directly in the production, were not excepted.* * * *" (Emphasis added.)

See *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539, 544, 93 N. E. 2d 19, wherein the court said: "Although the locomotive crane undoubtedly serves a valuable purpose in the conduct of appellant's business it is not used directly in the process of manufacturing paper * * *." See, also, *W. E. Anderson & Sons Co.* v. *Glander* (1951), 154 Ohio St. 561, 97 N. E. 2d 29.

In *Jackson Iron & Steel Co.* v. *Glander* (1950), 154 Ohio St. 369, 373, 96 N. E. 2d 21, we reviewed nine prior decisions in the area of direct use exception and gleaned from them a general rule:

"* * * for the purchase of an item to be excepted from taxation under the Sales Tax Act or the Use Tax Act the item must be indispensable to *and* directly connected with the actual manufacture or processing of the particular article to be sold." (Emphasis added.)

Using that test, we held that:

"* * * The purchase of machinery and equipment for use in mining coal, which coal is not sold but is used in the production of pig iron for sale, does not come within the exceptions of the * * * statutes."

*National Tube* v. *Glander, supra* (157 Ohio St. 407), was a major case in "direct use" law and has been extensively utilized by both parties to the instant controversy. National Tube, which manufactured various types of steel pipe and tubular products, contended that certain machinery used in its business was not subject to sales or use tax, claiming that it was "tangible personal property used or consumed directly in the production of tangible personal property for sale by manufacturing, processing * * *."

The machinery involved consisted of two Hulett ore unloaders, with parts, and an ore bridge. The former was used to unload, from the holds of ships, iron ore or limestone in "substantially the same form in which it comes from the mines or quarries." The latter was used to remove the iron ore from where the unloaders deposited it, "distributing it over the storage yard and later loading it into the 'ore jimmies' for transportation to the stockhouse," from whence it went to the blast furnace for reduction into molten steel.

At page 411, we held that the "Board of Tax Appeals was justified in finding that the Hulett ore unloaders and the ore bridge are employed in operations *preliminary* and *preparatory* to manufacturing or processing, and are not used or consumed directly in producing tangible personal property for sale by manufacturing or processing within

170

the contemplation of the applicable statutes, and hence their purchase or use was not excepted from taxation.'' (Emphasis added.)

We also concluded that the terms ''manufacturing'' and ''processing'' ''imply essentially a transformation or conversion of material or things into a different state or form from that in which they originally existed—the actual operation incident to changing them into marketable products.[3] Examples given are the slaughtering of livestock, the milling of grain and the spinning of cotton. See *Schumacher Stone Co.* v. *Tax Commission*, 134 Ohio St. 529, 534, 18 N. E. (2d), 405, 407, 120 A. L. R. 1199; *Huron Fish Co.* v. *Glander, Tax Commr.*, 146 Ohio St. 631, 67 N. E. (2d) 546; *Corn Products Refining Co.* v. *Federal Trade Commission* (C. C. A. 7), 144 F. (2d), 211, 219; *Moore et al., State Tax Commission*, v. *Farmers Mutual Mfg. & Ginning Co.*, 51 Ariz. 378, 382, 77 P. (2d) 209, 211; and *Colbert Mill & Feed Co.* v. *Oklahoma Tax Commission*, 188 Okla. 366, 368, 109 P. (2d), 504, 506.''

Additionally, it was noted, at page 411, that ''* * * in the case of *Mead Corp.* v. *Glander, Tax Commr.*, 153 Ohio St. 539, 93 N. E. (2d) 19, this court did hold that the sale or use of certain transportation devices, cranes and other tools was excepted from taxation, but as specifically pointed out in the later case of *Jackson Iron & Steel Co.* v. *Glander, Tax Commr.*, 154 Ohio St. 369, 96 N. E. (2d), 21, 23, those devices were necessary adjuncts in carrying on and continuing manufacturing and processing to complete a product, *after such activities had commenced.*''[4]

The word ''adjuncts,'' in the above quotation, has been the cause of much speculation since 1968, when an amendment to the direct use exception incorporated the same word and similar phraseology. (132 Ohio Laws, pt. 1, 1985.)

An examination of *Jackson, supra*, reveals that the word ''adjuncts'' was never used in that case. What did

[3]See R. C. 5739.01(S).
[4]See R. C. 5739.01(S).

appear was that "In *Mead Corp.* v. *Glander* \* \* \* it was decided that the sale of transportation devices, cranes and other tools used primarily and *directly* in the process of manufacturing tangible personal property, after such processing had commenced, is excepted from taxation." (Emphasis added.)

That statement is a reaffirmation of *Mead*, and, as such, did not pass upon any concept of "adjunct." *A fortiori, National Tube* should not be construed to necessarily support or deny the propositions of the instant parties regarding the meaning of the statutory term *"adjunct."* The equipment in *Mead* was excepted from taxation because it was found to be *primarily* and *directly* used, *in* production.

In *Powhatan Mining Co.* v. *Peck, supra* (160 Ohio St. 389), we stated that even though there was evidence to the effect that "the entire plant would shut down in ten minutes," if the equipment for which the exception was sought was not available for use, the equipment (trucks) "were not used directly in production," and, therefore, were not entitled to exception from taxation.

In the case of *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, 149 N. E. 2d 1, the syllabus states:

"In determining whether tangible personal property is used or consumed directly in the production of tangible personal property for sale by manufacturing or processing, and, therefore, whether its sale or use is excepted from taxation under the provisions of subdivision (E) (2) of Section 5739.01, or subdivision (C) (2) of Section 5741.-01, Revised Code, the test is not whether such property is essential to the operation of an 'integrated plant,' the test to be applied being, *when* does the actual manufacturing or processing activity begin and end, and is the property used or consumed *during and in the manufacturing or processing period.*"

In the opinion, at page 367, it is noted that "\* \* \* our rejection of the 'integrated plant' theory does not contemplate the breaking up of a single manufacturing or

processing machine into its component parts and the segregation of such parts into classes that are considered to be used directly in the operation of that machine and those that are not. Factually, the Tax Commissioner and the Board of Tax Appeals treated the various items of property involved herein as separate instrumentalities. With that treatment we are in accord, and we are satisfied, generally, that the decisions of the board in that respect are neither unreasonable nor unlawful." In *General Motors Corp.* v. *Bowers* (1959), 169 Ohio St. 361, 159 N. E. 2d 739, and *Ohio Stove Co.* v. *Bowers* (1961), 171 Ohio St. 484, 172 N. E. 2d 295, we denied exception from taxation to equipment and machinery in "use-on-use" situations. In *General Motors,* we held that "* * * sales and use tax exceptions are not applicable to tools purchased and *used* for the manfacture of other tools which in turn are later *used* directly in the manufacture of automobile body panels." (Emphasis added.)

In *Ohio Stove,* a case factually similar to the one at bar, we said that the test for determining whether tangible personal property is used or consumed *directly* in the production of tangible personal property for sale by manufacturing or processing and, therefore, whether it is excepted from taxation under R. C. 5739.01(E) (2) is, "* * * not whether the property is essential to the operation of the plant, but whether it is an actual part of the process of manufacture." (At page 485.) See, also, *United States Steel Corp.* v. *Bowers* (1960), 170 Ohio St. 558, 563, 167 N. E. 2d 87 ("There are many things essential to the operation of an industry whose sale or purchase is not excepted from the tax because they are not used or consumed [directly] in the manufacturing process"), and *Warren Telephone Co.* v. *Bowers* (1962), 173 Ohio St. 164, 180 N. E. 2d 595.

Based on our decisions from *Saunders Mills, supra* (139 Ohio St. 227), to *Warren Telephone, supra,* the settled question for determining an exception under R. C. 5739.01(E) (2) turns upon the beginning and ending of the actual transformation or conversion of material into

a different state or form from that in which it originally existed. If the primary use or consumption of an item of tangible personal property is made directly in the process of transforming or converting tangible personal property into tangible personal property for sale, then it is excepted from taxation. To be sure, the multitude of cases present diverse factual situations, but for nearly 30 years that basic test has remained unchanged.

In 1961, the law was amended to extend the scope of the exemption. Effective January 2, 1962, the General Assembly enacted R. C. 5739.02(B) (17) (Amended Sub. H. B. No. 374, 129 Ohio Laws 1336, 1339). As amended, R. C. 5739.02(B) stated, in part:

"(B) The tax [sales] does not apply to the following: "* * *

"(17) Sales to persons engaged in manufacturing, processing, assembling, or refining, of tangible personal property for use or consumption directly in the production by manufacturing, processing, assembling, or refining of other tangible personal property for use or consumption directly in the production of tangible personal property for sale by manufacturing, processing, assembling or refining; and of material and parts for incorporation into any such tangible personal property for use or consumption in production * * *."

The amendment, in effect, overruled some of our prior denials of specific exception.

For example, in *General Motors Corp. v. Bowers, supra* (169 Ohio St. 361), at page 364, we said:

"Restated and reduced to its lowest terms, the question before this court is whether the statutory sales and use tax exceptions are applicable to tools purchased and used for the manufacture of other tools which in turn are later used directly in the manufacture of automobile body panels to be sold by the appellant. The appellant asks this court to hold that since the *manufactured* tools are used directly in the manufacture of body panels the *purchased* tools likewise are used *directly* in the later manufacture of the body panels although the use of the purchased tools

is limited to the earlier production of the manufactured tools. To so hold would constitute a disregard of the plain meaning of the word 'directly' which the dictionaries define as 'without the intervention of a medium or agent.' It would seem beyond cavil that the manufactured tools are an intervention between the purchased tools and the final body panels.''

And in *Ohio Stove, supra* (171 Ohio St. 484), we had utilized the same rationale to hold that *mold making machinery* was not within the scope of ''directly,'' even though the molds themselves were used in the production of iron castings, the product manufactured for sale.

The Tax Commissioner now concedes that, under the 1961 amendment, the system which was installed by Canton Malleable and the replacement parts thereto, would have been excepted from taxation. We agree. However, R. C. 5739.02(B)(17) was repealed, effective September 1, 1967 (Amended Sub. S. B. No. 350, 132 Ohio Laws 2308), and appellee's claim to exception in this case is for replacement parts purchased after that date. As part of that same bill, the General Assembly enacted R. C. 5739.01(S), which was to take effect December 1, 1967. That section provided:

''(S) 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced.''

We here point out that the ''direct use'' language of R. C. 5739.01(E)(2) has remained intact and unchanged in that subsection since its addition in 1936. The crux of the instant controversy involves the intention which the General Assembly had in enacting (S), while coordinating it with (E)(2).

Appellant contends in his brief that R. C. 5739.01(S) "was conceived from this court's opinion in the *National Tube Co.* case," and that as a result, "the inclusion of the term 'adjuncts' in Section 5739.01(S), Revised Code, did not broaden the exemption provided by Section 5739.01 (E)(2), Revised Code." However, appellant's reliance upon *National Tube Co.* v. *Glander* is misplaced. As previously pointed out, our use of the term "adjunct" in that case was not intended as an interpretation of a future statutory "adjunct" exception and, in fact, conveyed nothing in derrogation of traditional ideas of the "direct use" exception of (E)(2).

Nevertheless, the addition of (S) cannot be dismissed as meaningless. The General Assembly's amendment to a section of the Revised Code is presumed to have been made to effect some purpose. *State, ex rel. Carmean,* v. *Board of Edn.* (1960), 170 Ohio St. 415, 165 N. E. 2d 918; *Columbus-Suburban Coach Lines* v. *Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125, 254 N. E. 2d 8; *Fyr-Fyter Co.* v. *Glander, supra* (150 Ohio St. 118); *Leader* v. *Glander* (1948), 149 Ohio St. 1, 77 N. E. 2d 69. Appellee, contending that new subsection (S) considerably broadens the exception of (E)(2), places great reliance upon the fact that its mold producing system is physically and electrically interconnected. Since the system functions together, or not at all, it is necessary in its entirety for automatic casting production. Hence, appellee urges that the system and its repair parts should be excepted in its entirety as an adjunct to the manufacturing process.

Underlying appellee's argument is the assumption that the addition of subsection (S), in effect, constitutes a repeal by implication of the "direct use" requirements of (E)(2). We do not agree. As we have often said, "* * * repeals by implication are not favored and will not be found unless the provisions of the purported repealing act are so totally inconsistent and irreconcilable with the existing enactment as to nullify it." *Lucas County Commrs.* v. *Toledo* (1971), 28 Ohio St. 2d 214, 277 N. E. 2d 193.

Under the facts, in the instant case, it is clear that subsections (E)(2) and (S) can and should be read together. Underlying our decision is the conviction that the General Assembly did not intend a complete destruction of the "direct use" limitation at this time. We gain a measure of support from the fact that even the "use-on-use" exception demanded that tangible personal property be used or consumed, "*directly* in the production by manufacturing, processing, assembling, or refining of other tangible personal property * * * for sale * * *." Former R. C. 5739.02(B)(17) (129 Ohio Laws 1336, 1339). (Emphasis added.)

More significant, however, is the fact that R. C. 5739.01(S) itself directs that it be read *in pari materia* with (E)(2), thereby clearly implying that we are to give continued effect to the "direct use" limitation. As stated by the General Assembly, "* * * and, for the purpose of the exceptions contained in division (E)(2) of this section, includes * * * adjuncts * * *."

Both parties have offered a multitude of dictionaries in support of their respective theories of the meaning of "adjunct." It would serve no useful purpose to restate the various definitions here. Suffice it to say that common to all standard descriptions of the term are the words "auxiliary" and "subsidiary." While it is self-evident that appellee's system is "auxiliary" or "subsidiary" to the manufacturing process itself, it is also arguable that almost any given piece of machinery in any particular plant could be "subsidiary" or "auxiliary" to the overall process of manufacturing. If the General Assembly had intended to grant so sweeping an exception as that, excoriating 36 years of our decisions and the legislative judgment that preceded them, we do not believe that they would have done so in such an inconspicuous manner. This is especially so in light of the fact that no alteration was made to the enduring wording of (E)(2).

Subsection (S) demands that the thing sought to be excepted from taxation be (1) an adjunct, (2) used at the

same location, and (3) used after the transforming or conversion has commenced. Subsection (E)(2) adds the additional requirement that the thing be adjunct to *direct* use or consumption. In appellee's process, the molds themselves are used directly in the production for sale by manufacturing of iron castings and are clearly excepted from taxation. However, the mold making system, although used "at the same location" and used after the "transforming or conversion" has commenced, is not, either by component part or by the whole, adjunct to direct use or consumption in production. The machines which actually make the mold and carry it to the pouring area cannot be considered supplemental, or auxiliary, or subsidiary *to the molds themselves*, and the lack of this particular and necessary nexus is fatal to the exception urged.

In view of all of the foregoing, we find that the decision of the Board of Tax Appeals is unreasonable and unlawful, and must be reversed, and the cause remanded for further proceedings.

*Decision reversed.*

O'NEILL, C. J., CORRIGAN, STERN and BROWN, JJ., concur.

SCHNEIDER and LEACH, JJ., dissenting. If the items involved are not "adjuncts" to directly producing castings, it is virtually impossible to ascribe any meaning whatsoever to the General Assembly's addition of that word to the statutes. Nor do we think the majority sufficiently resolves the dilemma of a statutory change without meaning.