OHIO FERRO-ALLOYS CORP., APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLEE.

(No. 72-766—Decided May 16, 1973.)

*Messrs. Day, Ketterer, Raley, Wright & Rybolt* and *Mr. John F. Buchman*, for appellant.

*Mr. William J. Brown*, attorney general, and *Mr. Will Kuhlmann*, for appellee.

*Per Curiam.* The issue in this case is whether certain equipment purchased and used by appellant in the production of ferro-alloys is excepted from the Ohio sales and use taxes.

R. C. 5739.01(E)(2) provides, in part:

"(E) 'Retail sale' and 'sales at retail' include all sales *except* those in which the purpose of the consumer is:

"* * *

"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing * * *." (Emphasis added.)

For materials or equipment to be excepted under the "manufacturing exception," they must be involved in the manufacturing process and that involvement must be direct.

First, it is necessary to determine the beginning and end of the manufacturing process; anything that is used before or after such process is not within the exception of R. C. 5739.01(E)(2). This court, in *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 170, held that "the terms 'manufacturing' and 'processing' imply essentially a transformation or conversion of material or things into a different state or form from that in which they originally existed—the actual operation incident to changing them into marketable products."

In this case, appellant contends that the weighing and mixing of raw materials before they are charged into the furnace is necessary to obtain a satisfactory product and insure the efficient operation of the furnace. The materials are weighed prior to being charged into the furnace to assure that there is a proper proportion of the raw materials.

They are also mixed in a certain way so that oxides and carbons are located next to one another; this pre-mixing and locating is necessary to make certain that the proper reaction will take place because the location of the materials cannot be changed once they are charged into the furnace. This weighing and mixing, however, does not amount to a change into a "different state or form." A witness for appellant testified to the importance of the mixing and weighing:

"* * * We alternate them, because intimacy of mixture of these compounds is important when the material reaches the furnace.

"* * *

"The most important change that occurs in this system is the—put it this way, the nonreversing, mixing of materials." His testimony did not indicate that there was any change in form or state before the materials entered the furnace.

So the weighing and mixing of the raw materials occurs before the manufacturing process begins, and the equipment used in those processes is not excepted from tax under R. C. 5739.01(E)(2).

The "wood hoggers" chop up logs into wood chips that are one of the essential materials to be charged into the furnaces. Appellant claims that the wood chips are one of the raw materials used in the manufacturing process and that the preparation of these is therefore one of the steps in transforming raw materials into the finished product.

As appellant states, the *wood chips* are the raw material, not the logs. The "wood hoggers" merely produce wood chips; they do not convert logs into a final marketable product. It is not the logs that are transformed into the ferro-alloys; rather it is the wood chips that are so transformed. The process by which the "wood hoggers" convert logs into wood chips is one step removed from the transforming of raw materials into marketable products. This process involves the preparation of raw materials prior to the commencement of manufacturing. The "wood hog-

gers'' are involved ''* * * in operations *preliminary* and *preparatory* to manufacturing or processing, and are not used or consumed directly in producing tangible personal property for sale by manufacturing or processing within the contemplation of the applicable statutes, and hence their purchase or use was not excepted from taxation.'' *National Tube* v. *Glander* (1952), 157 Ohio St. 407, 411.

Appellant contends that the present case is similar to *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539, where the taxpayer manufactured paper from logs, or *Charles Pfizer & Co.* v. *Porterfield*, 71-02-0268 BTA, where lime was made from limestone. Those are two distinctly different cases. Logs are not used directly in the production of ferro-alloys in the same manner as logs are used in the production of paper, nor as limestone is used in the manufacture of lime.

We now come to a consideration of the three miscellaneous items which appellant claims should be excepted from taxation: a scale, lighting fixtures, and recording devices. The scale weighs the hot metal casts after they have been removed from the furnace. It is used at a time during the manufacturing process and is therefore excepted from taxation.

The manufacturing continues while there is a ''transformation or conversion * * * into a different state or form from that in which they originally existed—the actual operation incident to changing them into marketable products.'' The weighing of the hot metal casts occurs prior to the time that the casts are taken to the crushing and screening equipment, where they are broken and crushed into sizes according to customer specification. This breaking and crushing would be included in the manufacturing process, for casts are changed in *form* when they are crushed or broken.

Not only does the scale fulfill the requirement that it be used during the manufacturing period, but it also satisfies the direct use requirement, as expressed in the syllabus of *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, which provides:

"In determining whether tangible personal property is used or consumed directly in the production of tangible personal property for sale by manufacturing or processing, and, therefore, whether its sale or use is excepted from taxation under the provisions of subdivision (E)(2) of Section 5739.01, or subdivision (C)(2) of Section 5741.01, Revised Code, the test is not whether such property is essential to the operation of an 'integrated plant,' the test to be applied being, *when* does the actual manufacturing or processing activity begin and end, and is the property used or consumed *during and in the manufacturing or processing period.*"

Therefore, since the scale is used *during* the manufacturing period as shown herein above, it fulfills the direct use requirement. *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539, and *France Co.* v. *Evatt* (1944), 143 Ohio St. 455.

The lighting fixtures "* * * while essential for the operation of the business as a whole * * *" are not involved with the manufacturing process, and "are not entitled to be excepted from the tax." *Warren Telephone Co.* v. *Bowers* (1962), 173 Ohio St. 164, 168.

The last item is the recording devices that indicate and record the amount of energy used in the furnace. They are used "for the purpose of controlling the furnace, for the use of human judgment to change the parameters of the furnace to make it behave in the way you wish it to behave."

R. C. 5739.01(S), regarding other bases for exception, provides that:

" 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."

This court, in *Canton Malleable Iron* v. *Porterfield, supra* (30 Ohio St. 2d 163), discussed the legislative history behind this subsection. After explaining that subsection (S) is to be read in conjunction with subsection (E)(2), the court, at pages 176 and 177, enunciated three requirements an adjunct must fulfill to be excepted: (1) Used at the same location; (2) used after the transforming or conversion has commenced; and (3) related to direct use or consumption in production.

The recording devices meet all these requirements: They are " 'auxiliary' or 'subsidiary' " to the manufacturing process, for they aid in the operation of the furnaces which are an essential factor in the manufacturing process. They are used at the very place where the furnaces are located; they are used after the transforming (manufacturing) has commenced, for the manufacturing begins, at the latest, when the raw materials are being melted in the furnace; and they are related to direct use in that the furnace to which they are adjunct is used directly in manufacturing. Therefore, the recording devices on the furnaces are adjuncts, as that term is used in 5739.01(S), and are therefore excepted from taxation.

Subsection (S) became effective on September 1, 1967; so any recording devices purchased on that date or thereafter are excepted from taxation.

From the foregoing it follows that, as to the taxability of the weighing and mixing equipment, the wood processing equipment, and the lighting fixtures, the decision of the Board of Tax Appeals is neither unreasonable nor unlawful and is affirmed. As to the taxability of the scale and the recording devices, the decision of the board is unreasonable and unlawful, and is, therefore, reversed.

*Decision affirmed in part and reversed in part.*

O'Neill, C. J., Herbert, Corrigan, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.