268

STANDARD PRESSED STEEL CO., CLEVELAND CAP SCREW
DIV., APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as Standard Pressed Steel Co. v. Lindley (1980),
62 Ohio St. 2d 268.]

(No. 79-1516—Decided June 4, 1980.)

Mr. *Carlton S. Dargusch* and Mr. *Edward J. Bernert,* for appellant.

Mr. *William J. Brown,* attorney general, and Mr. *James C. Sauer,* for appellee.

*Per Curiam.* The issue in the cause *sub judice* is whether the purchase of tangible personal property used in the initial "pickling" process is excepted from Ohio sales and use taxes. More narrowly construed, the threshold issue is at what point does appellant's manufacturing or processing of tangible personal property for sale begin?

Appellant asserts the manufacture of commercial fasteners begins with the initial pickling of the hot rolled rods. We agree.

R. C. 5739.01[1] reads, in pertinent part, as follows:

---

[1] In light of R. C. 5741.02(C)(2), the discussion herein will focus solely upon the provisions of the Ohio sales tax.

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining, or to use or consume the thing transferred directly in the production of tangible personal property* * *for sale* * *."

In *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, we stated, at pages 172-173:

"* * *[T]he settled question for determining an exception under R. C. 5739.01(E)(2) turns upon the beginning and ending of the actual transformation or conversion of material into a different state or form from that in which it originally existed. If the primary use or consumption of an item of tangible personal property is made *directly in the process of transforming or converting tangible personal property into tangible personal property for sale,* then it is excepted from taxation. To be sure, the multitude of cases present diverse factual situations, but for nearly 30 years that basic test has remained unchanged." (Emphasis added.)

Initially, it is noted that manufacturing or processing alone, pursuant to R. C. 5739.01(S), does not qualify as an exception from taxation. Rather, it is the "manufacturing or processing for sale" that comes within the purview of an exception from the Ohio sales and use taxes.

Appellee relies upon this court's decision in *Ohio Ferro-Alloys Corp.* v. *Kosydar* (1973), 34 Ohio St. 2d 113, to show that the pickling process does not begin the manufacturing of the salable end product. In *Ohio Ferro-Alloys, supra,* we held that the purchase of a wood hogger which chopped logs into wood chips, which were then combined with other materials to manufacture the salable end product, was not excepted from Ohio sales and use taxes and, therefore, only preparatory to the manufacturing of the marketable product. In essence, we determined that the activity of the hogger was one step removed from the manufacturing process since it transferred logs, an unusable condition of wood, into chips, a usable condition. The chips, and not the logs, are the raw materials that are transformed into marketable products. The hogger, which was

used in the preparation of a raw material prior to the direct manufacturing was therefore not excepted.

Thereafter, this court decided *Interlake* v. *Kosydar* (1975), 42 Ohio St. 2d 457, which is much akin to our conclusion in *Ohio Ferro-Alloys, supra.* In *Interlake, supra,* the equipment involved in the production of coal to coke was held not to be excepted. This court determined, at page 459, that the coking process was "preliminary and preparatory to manufacturing or processing," since the manufacturing of the salable end product began in the blast furnace when the coke was mixed with iron ore and limestone. Finding the rationale of *Ohio Ferro-Alloys, supra,* proper, this court determined that the coking process was one step removed from the manufacturing or processing of the final marketable product and therefore not excepted.

We hold that the "pickling" process is "indispensable to and directly connected with the actual manufacturing or processing of the particular article to be sold." See *Jackson Iron & Steel Co.* v. *Glander* (1950), 154 Ohio St. 369, 373. Therefore, the "pickling" process is not one step removed and not preliminary, but rather is directly attributable to the salable end product.

The "pickling" process is a direct step in the transformation in the state of the hot rolled rods into the final product that is sold. This process actually causes a change in the coiled wire by smoothing the metallic surface so as to avoid decarburization during the "annealing" process. Furthermore, the removal of mill scale reduces the diameter by one to two mils and the weight is reduced by one to one and a half percent, thereby meeting customer specifications for strength and integrity of the commercial fasteners.

Our determination that the "pickling" process is not preliminary but rather direct is consistent with *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539, and *Charles Pfizer & Co.* v. *Porterfield* (May 31, 1972), 43 BTA Decns. No. 71-02-0268.

In *Mead, supra,* the production of white paper from logs began in the woodyard, where the wood was seasoned and prepared by a chipper. After the chipping, the chips were transported to the location where the wood was eventually cooked and thereafter bleached. The transportation equipment

was held to be excepted since it was directly in the manufacturing and production of the white paper, the salable end product.

In *Pfizer, supra,* the equipment used for the crushing of limestone from large chunks into smaller sizes suitable for transport was found to be directly in the manufacturing and production of lime and therefore excepted.

In *Ohio Ferro-Alloys,* discussed herein, the court distinguished *Mead, supra,* and *Pfizer, supra,* at page 117, where it stated:

"Appellant contends that the present case is similar to *Mead Corp.* v. *Glander*\*\*\*, where the taxpayer manufactured paper from logs, or *Charles Pfizer & Co.* v. *Porterfield*\*\*\*, where lime was made from limestone. Those are two distinctly different cases. *Logs are not used directly in the production of ferro-alloys in the same manner as logs are used in the production of paper, nor as limestone is used in the manufacture of lime.*" (Emphasis added.)

The raw materials, in both *Mead* and *Pfizer,* were processed by excepted equipment because the raw materials became integrated by design into the marketable product. If the excepted processed raw material was later combined with other materials or not used directly in the manufacture of a salable product, the equipment would be considered one step removed and not excepted,[2] in accordance with the rule expresssed in *Ohio Ferro-Alloys* and *Interlake.*

---

[2] *E. W. Ferry Screw Products, Inc.,* v. *Lindley* (July 29, 1976), 59 BTA Decns. No. D-497, is on all fours with the cause herein, but the Board of Tax Appeals reached a polar determination from its decision in the cause at bar. In this court's opinion, the decision of the Board of Tax Appeals, in *E. W. Ferry,* was correct as pronounced therein. In discussing the initial pickling process, the board exemplified situations where the purchase of equipment would not be excepted because the functions performed by this equipment would be "one step removed" from the manufacturing. The board, at page ten of its decision, stated:

"\*\*\*Had we before us equipment which produced the acid or the lime, we would deny exception for such equipment, because the acid and the lime were consumed in manufacturing but did not become a part of the final product, being one step removed from manufacturing. Equipment producing the acid or the lime would have been in the same category as the coking equipment of *Interlake* or the wood-hogger of *Ohio Ferro-Alloys* and not exceptionable. However, we have before us the acid, the lime, and the equipment used to convey the wire from the acid bath to the cold-heading machine, and their use or consumption is direct and is excepted."

Such is not the case herein. The material that is converted and transformed into commercial fasteners is the hot rolled rods purchased by appellant. The "pickling" is the beginning of the manufacturing process and therefore the equipment used in making this change of state or form is clearly excepted because it is used directly in the production of tangible personal property for sale by manufacturing.

Therefore, the decision of the Board of Tax Appeals denying tax exception for items used in the "pickling" process is reversed.

*Decision reversed.*

HERBERT, P. BROWN, LOCHER and HOLMES, JJ., concur.

W. BROWN, J., concurs in the judgment.

CELEBREZZE, C. J., and SWEENEY, J., dissent.