DENOON, APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLANT.

[Cite as DeNoon *v.* Limbach (1989), 42 Ohio St. 3d 35.]

(No. 88-1012—Submitted January 18, 1989—Decided April 12, 1989.)

*Burke & Rawlings Co., L.P.A.,* and *James F. Burke, Jr.,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Floyd J. Miller, Jr.,* for appellant.

MOYER, C.J. R.C. 5739.01(E)(2) excepts from Ohio sales tax items purchased by a taxpayer that are used or consumed directly in the production of tangible personal property for sale by manufacturing or processing.[1] During the relevant audit period, "manufacturing" was defined in R.C. 5739.01(R) (also numbered [S]), in pertinent part, as:

"* * * the transformation or conversion of material or things into a different state or form from that in which they originally existed * * *."

In *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, 5 O.O. 2d 3, 149 N.E. 2d 1, syllabus, this court stated the test to determine whether tangible personal property is used directly in manufacturing:

"* * * [T]he test is not whether such property is essential to the operation of an 'integrated plant,' the test to be applied being, *when* does the actual manufacturing or processing activity begin and end, and is the property used or consumed *during and in the manufacturing or processing period.*"

---

[1] We will only discuss sales tax exceptions because R.C. 5741.02(C)(2) renders sales tax exceptions applicable to the use tax.

We recently stated the test in *Southwestern Portland Cement Co.* v. *Limbach* (1988), 35 Ohio St. 3d 196, 198, 519 N.E. 2d 831, 833-834:

"Thus, to find a manufacturing exception under R.C. 5739.01(E)(2), it must first be determined that manufacturing has occurred (*i.e.*, a transformation or conversion of material or things into a different state or form has taken place). Then, the beginning and end of the manufacturing must be delineated. Finally, it must be decided whether the item under examination was used or consumed directly in manufacturing (*i.e.*, during and in the manufacturing)."

The commissioner argues that the contested items were not used directly in DeNoon's manufacturing because they were used either before or after transformation or conversion occurred. She maintains that manufacturing began, under the test announced in *Semac Industries* v. *Collins* (1976), 48 Ohio St. 2d 4, 2 O.O. 3d 2, 354 N.E. 2d 922, at the debarking machine and ended when the lumber was finally cut at the double trimmer.

The BTA excepted the equipment because it concluded that this court liberally applied the manufacturing exception in *Southwestern Portland Cement Co., supra.* In that case this court excepted mining equipment used to blast limestone from a quarry. We held that manufacturing began at that point because the limestone, which became the final manufactured product, was first changed in state or form in the blasting operation. The court followed *Standard Pressed Steel Co.* v. *Lindley* (1980), 62 Ohio St. 2d 268, 16 O.O. 3d 318, 405 N.E. 2d 281. That case held that the equipment that operates on raw materials, which by design become integrated into the marketable product, is excepted from taxation. To the contrary, equipment that operates on raw materials that are consumed in manufacturing but do not become a part of the product is not excepted. *Ohio Ferro-Alloys Corp.* v. *Kosydar* (1973), 34 Ohio St. 2d 113, 63 O.O. 2d 195, 296 N.E. 2d 533. The *Southwestern Portland Cement Co.* case should not be interpreted to be a new application of the manufacturing exception by this court.

The BTA also cited *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539, 42 O.O. 24, 93 N.E. 2d 19, which excepted a crane used to unload purchased wood pulp, stacking it according to type, and to carry selected pulp to the beater room. The court held that selecting and sorting these materials was a step in processing paper. Since the crane was used in this step, it was excepted.

The BTA's reliance on both cases is misplaced. In *Southwestern Portland Cement Co.*, this court held that manufacturing began at the quarry because a change in raw material began there. In this case, no change occurred in the logs until the debarking process.

The particular holding of *Mead Corp., supra,* was implicitly overruled in *Semac Industries* v. *Collins, supra,* when we held that the manufacturing in a sawmill began at the debarker because that was where transformation or conversion of the raw material first occurred. The court affirmed the BTA's denial of exception for forklift equipment that carried the log to the debarker. According to the court, this was a preliminary and preparatory operation under *Ohio Ferro-Alloys Corp.* v. *Kosydar, supra.*

Thus, the BTA erred when it excepted from taxation appellee's high lifts, crane, and related fuel and parts, used to unload, sort, stack and convey logs prior to the debarking process.

The chalk and lumber crayons were properly excepted because they were primarily used during and in

manufacturing by inspectors to grade and mark the length of the planks as they moved between the edger and the double-end trimmer. Therefore, these materials were used directly in manufacturing.

However, the BTA incorrectly determined that the manufacturing process did not end at the double-end trimmer machine, but continued in the air-drying phase. No machine was used to dry the wood that was stacked on the premises to be air dried. Thus, no machinery caused a change in the state or form of the product. The result would be different if a machine such as a kiln were used to dry the lumber. Assuming, *arguendo*, that a change in state or form occurred, DeNoon did not cause that change to occur with the carts, the high lifts, or any other equipment. See, also, *Galena Shale, Tile & Brick Co.* v. *Bowers* (Feb. 15, 1963), BTA No. 49253, unreported, and *Structural Stoneware, Inc.* v. *Kosydar* (Aug. 10, 1973), BTA No. A-301, unreported.

Accordingly, that portion of the BTA decision excepting from taxation the chalk and lumber crayons is affirmed. The remainder of the decision is reversed.

*Decision affirmed in part and reversed in part.*

SWEENEY, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

HOLMES and WRIGHT, JJ., dissent.

DOUGLAS, J., concurring. I concur in the judgment of the majority. Arguably, the chalk and lumber crayons should be excepted from tax because their use occurs while the manufacturing process is taking place. This point is not even contested in appellant's brief which contains no discussion or explanation as to why appellant Tax Commissioner thinks the chalk and crayons should be taxed.

With regard to the other items in question — the high lifts, the Barko crane, the lumber carts, fuel and spare parts — I strongly agree with the majority that these items should not be excepted from taxation as items used or consumed directly in the production of tangible personal property for sale by manufacturing or processing. I write separately only to express, once again, my concern for the piecemeal dismantling of the Tax Code.

It is understandable how the BTA came to the decision it rendered in this case. In attempting to follow the decision of a majority of this court in *Southwestern Portland Cement Co.* v. *Limbach* (1988), 35 Ohio St. 3d 196, 519 N.E. 2d 831, the BTA found all the items in question excepted from taxation. If the equipment used in the quarrying operation, reviewed in *Southwestern Portland Cement Co.,* is excepted from taxation even though the business involved was the manufacture of cement and no change in state or form of the limestone took place until much later in the operation, then it is easy to see how the BTA, in applying the rule set down in *Southwestern Portland Cement Co.* to the facts of that case, could come to the decision it did in the case at bar.

Even though it requires us to reverse the BTA (which thought it was relying on and following a previous decision of this court), it is both comforting and commendable to see us returning to what appears to be a clear definition of "manufacturing" and "processing" as set forth in R.C. 5739.01(R). It is not difficult to see how any one of us, including the BTA, could go astray when cases such as *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539, 42 O.O. 24, 93 N.E. 2d

19; *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, 5 O.O. 2d 3, 149 N.E. 2d 1; *Ohio Ferro-Alloys Corp.* v. *Kosydar* (1973), 34 Ohio St. 2d 113, 63 O.O. 2d 195, 296 N.E. 2d 533; *Gressel* v. *Kosydar* (1973), 34 Ohio St. 2d 206, 63 O.O. 2d 314, 297 N.E. 2d 532; *Interlake* v. *Kosydar* (1975), 42 Ohio St. 2d 457, 71 O.O. 2d 436, 330 N.E. 2d 444; *Semac Industries* v. *Collins* (1976), 48 Ohio St. 2d 4, 2 O.O. 3d 2, 354 N.E. 2d 922; *Standard Pressed Steel Co.* v. *Lindley* (1980), 62 Ohio St. 2d 268, 16 O.O. 3d 318, 405 N.E. 2d 281; *Southwestern Portland Cement Co.* v. *Lindley* (1981), 67 Ohio St. 2d 417, 21 O.O. 3d 261, 424 N.E. 2d 304; *OAMCO* v. *Lindley* (1986), 27 Ohio St. 3d 7, 27 OBR 427, 500 N.E. 2d 1379; and *Southwestern Portland Cement Co.* v. *Limbach* (1988), *supra,* are attempted to be reconciled.

It is the mandate of this court that " '[s]tatutes relating to the exemption or exception from sales or use taxes are to be strictly construed.' " *Philips Industries, Inc.* v. *Limbach* (1988), 37 Ohio St. 3d 100, 101, 524 N.E. 2d 161, 161-162. See, also, *Celina Mut. Ins. Co.* v. *Bowers* (1965), 5 Ohio St. 2d 12, 15, 34 O.O. 2d 7, 9, 213 N.E. 2d 175, 178; *General Mills, Inc.* v. *Limbach* (1988), 35 Ohio St. 3d 256, 258, 520 N.E. 2d 218, 219. If we would just consistently follow this mandate, there would be less confusion (and fewer appeals) for taxpayers, the commissioner, the bar and the bench.

SWEENEY, J., concurs in the foregoing concurring opinion.

HOLMES, J., dissenting. I totally agree with the Board of Tax Appeals' decision and would therefore affirm.

WRIGHT, J., concurs in the foregoing dissenting opinion.