3

NORTHERN OHIO SUGAR COMPANY, APPELLANT, *v.* LINDLEY,
TAX COMMR., APPELLEE.

(No. 78-98—Decided December 4, 1978.)

144

*Messrs. Dunbar, Kienzle & Murphey*, and *Mr. James R. King*, for appellant.

*Mr. William J. Brown*, attorney general, and *Mr. James C. Sauer*, for appellee.

PAUL W. BROWN, J. The taxpayer maintains that its purchases of coke are excepted from sales taxes by R. C. 5739.01(E)(2) which provides, in pertinent part, that:

" 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"* * * to use or consume the thing transferred directly in the production of tangible personal property * * * for sale by manufacturing, [or] processing * * *."

This is the so-called "manufacturing exception" which this court addressed in *Ohio Ferro-Alloys Corp.* v. *Kosydar* (1973), 34 Ohio St. 2d 113, at page 115:

"For materials or equipment to be excepted under the 'manufacturing exception,' they must be involved in the manufacturing process and that involvement must be direct.

"First, it is necessary to determine the beginning and end of the manufacturing process; anything that is used before or after such process is not within the exception of R. C. 5739.01(E)(2). This court, in *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 170, held that 'the terms "manufacturing" and "processing" imply essentially a transformation or conversion of material or things into a different state or form from that in which they originally existed—the actual operation incident to changing them into marketable products.' "

. . Thus, if appellant is to benefit from this exception, it

must be because the coke is purchased for the purpose of its use or consumption directly in the production of sugar. Traditionally, this court has focused on the ultimate disposition of a questioned purchase, where the reason for its acquisition was disputed or mixed and there was a need to provide a workable, objective method by which this court might test the taxpayer's purpose. Where, as here, the substance in question serves a dual purpose, *i. e.*, as a source of $CO_2$ and as a fuel for the limestone, each of which is found to fit within the language of the statute so as to qualify for exception, such exception cannot be denied by wrongful application of the "primary use" test.

One of the purposes for which taxpayer purchased coke here was to use it as a source of $CO_2$ in the manufacturing process. The issue thus arises whether the coke is "used or consumed" when it has been transformed into $CO_2$ arguably before entering into the manufacturing process, keeping in mind that anything "used or consumed" before or after production does not fall within the exception. *Ohio Ferro-Alloys, supra.*[1]

The commissioner relies upon *Ohio Ferro-Alloys, supra*, and *Interlake* v. *Kosydar* (1975), 42 Ohio St. 2d 457, as authority that the consumption of coke by taxpayer is preliminary and therefore outside the scope of the exception. Both cases held that the use of *implements* which prepare raw materials for introduction into the manufacturing process are preliminary and therefore not within the exclusion. Neither case, however, deals with the *material itself* which is prepared in an operation preliminary to manufacturing and which is subsequently injected into the actual manufacturing process, as would be the case here. The board in the instant cause resolved this issue by stating that:

---

[1] It should be noted that this court does not conclude that the transformation of coke into $CO_2$ within the lime kiln is preliminary to the manufacturing process. Indeed, this court holds *infra* that the lime kiln is an "adjunct" within the meaning of "manufacturing" or "processing," as defined in R. C. 5739.01 (S), and therefore part of the manufacturing process.

"* * * the exception is available for purchased material that is altered in a preliminary operation from an unusable state to a usable one for later introduction into the processing. The material, though originally in an unusable state, is a proper subject for exception when it is purchased if it will ultimately be used in a direct way in the manufacturing, for the material is used or consumed directly in the production of tangible personal property for sale by manufacturing when it can be used after the alteration. We do not think that the legislature meant to apply the tax to material that is used or consumed in the exceptionable manner merely because, at its purchase, it was not usable. The material itself is excepted from the tax, even though the implements which alter it may not be."

This analysis was proper. The coke, which is predominately carbon, is incinerated in the lime kiln with oxygen to form $CO_2$. The $CO_2$ is then directly consumed in the manufacturing process to remove impurities. The fact that the coke was chemically altered allegedly prior to its introduction into the manufacturing process does not negate that it was ultimately consumed directly in the production of tangible personal property for sale by manufacturing or processing. Thus, whether this court regards the transformation of coke into $CO_2$ as preliminary to, or part of, the manufacturing process, the taxpayer's clear purpose to use the coke in production, as verified by its actual subsequent use, is sufficient to make the coke a proper subject for exception within R. C. 5739.01 (E)(2).[2]

As suggested previously, however, this court does not believe that the use of the lime kiln is preliminary to the manufacturing process.[3] This has particular relevance

---

[2]No question was raised as to whether the coke was "directly" used or consumed in the manufacturing process. Had it been brought into issue, the proper inquiry would have been "* * * [W]hen does the actual manufacturing or processing activity begin and end; and is the property used or consumed *during and in the manufacturing or processing period?*" (*Youngstown Bldg. Material & Fuel Co.* v. *Bowers* [1958], 167 Ohio St. 363.)

[3]See footnote 1, *supra.*

to the second purpose for which the coke was purchased, *i. e.*, as a source of fuel to heat the limestone. For the reasons that follow, this purpose also qualifies as a proper subject for exception.

To be "preliminary," an operation must come prior to the start of manufacturing. "Manufacturing" is defined in R. C. 5739.01 (S) as "* * * the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E) (2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."

In *Canton Malleable Iron Co.* v. *Porterfield, supra*, at page 176, the term "adjunct" was defined as meaning auxiliary or subsidiary to the main manufacturing process. This court, at pages 176-177, then went on to state the general requirements for an adjunct under R. C. 5739.-01(S): "Subsection (S) demands that the thing sought to be excepted from taxation be (1) an adjunct, (2) used at the same location, and (3) used after the transforming or conversion has commenced. Subsection (E)(2) adds the additional requirement that the thing be adjunct to *direct* use or consumption." (Emphasis *sic*.)

The lime kiln fits the definition of an excepted adjunct. First, it is auxiliary or subsidiary to the first carbonation and second carbonation stations, which are directly on the production line; second, it is used at the same location to supply $CO_2$ to the first and second carbonation stations; third, it is used after the beets are sliced into cossettes, the beginning point of the manufacturing process; and fourth, without the lime kiln, it would be impossible to operate the first and second carbonation stations, *i. e.*, there would be nothing with which to produce the $CaO$ and the $CO_2$ in the manner required. Without these two compounds, there could be no chemical reaction to form the floc particles to remove impurities in

the raw juice, and no sugar would be produced. Accordingly, this court finds that the taxpayer's purchases of coke for the purpose of using it as fuel within the lime kiln are proper for exception within R. C. 5739.01 (E)(2) and (S).

The commissioner contends next, however, that the "primary use" test should be applied here, and that if properly applied, the taxpayer is not entitled to the exception of R. C. 5739.01 (E)(2). He argues that the burning of the coke in the lime kiln serves two functions: the carbon from the coke is a source of $CO_2$ and the heat generated by the burning coke causes the limestone to dissociate. Because the limestone furnishes almost 65 percent of the $CO_2$ necessary for the purifying operation, whereas the coke supplies only 35 percent, the primary use of the coke is said to fuel an unexpected operation, the heating of the limestone in the kiln. The use of the coke in manufacturing would be merely incidental, thus making the purchases taxable.

This argument is totally misplaced. The fact that the limestone furnishes 65 percent of the $CO_2$ in the manufacturing process has no relevance to the purpose for which the coke was initially purchased. If any inquiry as to percentage use is to be made, it would be directed exclusively to the different uses to which the *coke* is put, not the limestone. But, such apportionment is not possible here, where the coke has concurrent uses, neither of which detracts from the other in terms of tradeoff in ultimate use. Furthermore, the "primary use" test cannot be applied in situations where, as we have just determined, the purposes for which an item is purchased are excepted by statute. In such cases, whichever purpose might be found to be primary would qualify the taxpayer for the exception. There is therefore no need to inquire further as to the taxpayer's dominant intent. Appellant's purchases of coke are accordingly excepted from sales tax by R. C. 5739.01 (E)(2) and (S).

For the foregoing reasons, the decision of the Board

of Tax Appeals is unreasonable and unlawful, and it is, therefore, reversed.

*Decision reversed.*

LEACH, C. J., CELEBREZZE, W. BROWN, SWEENEY and LOCHER, JJ., concur.

HERBERT, J., concurs in the syllabus and judgment.