MARKEL et al., Appellees,

v.

OHIO STATE MEDICAL BOARD et al., Appellants.

[Cite as *Markel v. Ohio State Medical Bd.* (1989), 62 Ohio App.3d 105.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–885.

Decided March 30, 1989.

*Livorno & Arnett* and *Henry A. Arnett,* for appellees.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Rachel L. Belenker* and *Cheryl J. Nester,* for appellants.

STRAUSBAUGH, Judge.

This is an appeal by defendants from a decision of the trial court granting a writ of mandamus in favor of plaintiff Jack E. Markel ("plaintiff") and overruling defendants' motion for dismissal.

On or about April 26, 1985, plaintiff submitted an application to the State Medical Board of Ohio ("board") requesting to be licensed as a naprapath. At the time plaintiff submitted his application, naprapathy was specifically recognized as a limited branch of medicine in Ohio codified under former R.C. 4731.15. Ohio has no licensed naprapaths and has not had any since the 1930s. Upon receipt of plaintiff's application, the board submitted a survey to the Chicago National School of Naprapathy, the institution from which plaintiff had received his degree in naprapathy. The purpose of the survey, as required by R.C. 4731.19, is to allow the board to determine the standing of a school prior to admitting applicants to a licensing examination. When the survey was returned to the board in March 1986, it appeared to the board to have been completed by plaintiff who was then a board member of the school. Apparently the survey also contained several inconsistent and incomplete answers. Since the board was unable to favorably determine the standing of

the school from the survey, additional information was sought from the school, plaintiff and the state of Illinois.

During the pendency of plaintiff's application, the General Assembly passed Am.Sub. H.B. No. 769, effective March 17, 1987, which no longer listed naprapathy as a limited branch of medicine. Section 2 of Am.Sub. H.B. No. 769 specifically notes that R.C. 4731.15 as then existing is repealed. Apparently, despite the statutory change, the board continued to investigate the school and held plaintiff's application open.

On October 16, 1986, plaintiff filed his complaint against the board, petitioning for a writ of mandamus ordering the board to process his application to practice naprapathy. Plaintiff also alleged a second claim for relief in which he requested damages claiming a violation of his constitutional rights caused by the board's delay in processing his application. On January 21, 1988, the trial court dismissed plaintiff's second claim holding that such a claim would be required to be filed in the Court of Claims.

Subsequently, on July 27, 1988, the trial court issued its decision granting plaintiff's request for a writ of mandamus. In its entry, the trial court stated the board was still authorized under the amended version of R.C. 4731.15 to consider plaintiff's application since the legislature did not specify that the list of limited branches in the statute is exclusive. The trial court ordered the board to process plaintiff's application and to issue an order approving or denying the application for admission to sit for examination within ninety days. Thereafter, the board moved for a stay which to date has not been ruled upon.

On appeal, defendant asserts two assignments of error for our review:

"I. The lower court erred as a matter of law in holding that the State Medical Board could still consider all limited branch applications after R.C. 4731.15 was amended and abolished naprapathy and seven (7) other categories as limited branches of medicine or surgery in Ohio.

"II. The lower court erred as a matter of law in granting the writ of mandamus because the plaintiff failed to prove that the board breached its duty to process his limited branch application."

Defendants argue in their second assignment of error that the trial court improperly issued a writ of mandamus since plaintiff has failed to demonstrate any intentional or unreasonable delay by the board to process plaintiff's application. Instead, this delay was occasioned by a lack of sufficient information. No specific time constraints are placed upon the board for processing an application and when inadequate information is provided a longer period will necessarily be required.

In their first assignment of error, defendants argue that they are without authority to license anyone to practice naprapathy as it has been abolished as a limited branch of medicine or surgery in Ohio. At the time plaintiff submitted his application in April 1985 to the board, requesting to be licensed in the practice of naprapathy in Ohio, R.C. 4731.15(A) provided in pertinent part:

"The state medical board shall also examine and register persons desiring to practice any limited branch of medicine or surgery, and shall establish rules governing such limited practice. *Such limited branches of medicine or surgery shall include naprapathy,* spondylotherapy, mechanotherapy, neuropathy, electrotherapy, hydrotherapy, suggestive therapy, psychotherapy, magnetic healing, Swedish movements, massage, and cosmetic therapy. * * * " (Emphasis added.)

Subsequently, effective March 17, 1987, the statute was amended eliminating naprapathy, as well as seven other categories, from those limited branches of medicine specifically enumerated in the statute. It is defendants' contention that, by excluding naprapathy from the list of limited branches of medicine, it was the General Assembly's intent to narrow the practice in a limited branch of medicine to only those specifically set forth in the amended version of R.C. 4731.15(A).

In attempting to discern the General Assembly's intent, we agree with the premise of defendants' argument that every amendment to a statute is intended to effect some purpose, *Canton Malleable Iron Co. v. Porterfield* (1972), 30 Ohio St.2d 163, 175, 59 O.O.2d 178, 184, 283 N.E.2d 434, 441. However, it is equally well-established that " * * * [t]hat purpose may be either to add new provisions and conditions to the section as it then stands, *or for the purpose of making plain the meaning and intent thereof.* * * * " (Emphasis added.) *Lytle v. Baldinger* (1911), 84 Ohio St. 1, 8, 95 N.E. 389, 390. We are further restricted in adopting defendants' interpretation of legislative intent to eliminate naprapathy as a limited branch of medicine in Ohio by the Supreme Court's language in *Lucas Cty. Commrs. v. Toledo* (1971), 28 Ohio St.2d 214, 217, 57 O.O.2d 440, 442, 277 N.E.2d 193, 194: " * * * As we have said many times, repeals by implication are not favored and will not be found unless the provisions of the purported repealing act are so totally inconsistent and irreconcilable with the existing enactment as to nullify it. * * * " (Citations omitted.)

As amended, R.C. 4731.15(A) now states in relevant part that:

" * * * Such limited branches of medicine or surgery *shall include* mechanotherapy, massage, and cosmetic therapy." (Emphasis added.)

In attempting to determine whether the General Assembly, in using the language "shall include," intended to allow for the licensing in only those limited branches of medicine enumerated in the amended statute, we are mindful of the mandate of R.C. 1.42, which states in relevant part, that: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. * * * "

We find the Supreme Court's decision in *In re Hartman* (1983), 2 Ohio St.3d 154, 2 OBR 699, 443 N.E.2d 516, to be helpful in making our determination. In *Hartman*, the court stated at 155–156, 2 OBR at 700, 443 N.E.2d at 517:

"To ascertain the common usage of the word '*including*,' it is appropriate to consult Webster's Third New International Dictionary. Therein, 'include' of which 'including' is a participle is defined as meaning:

" '[T]o place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate. * * * To take in, enfold, or comprise as a discrete or subordinate part or item of a larger aggregate group or principle. * * * '

"In short, '*including*' implies that that which follows is a partial, not an exhaustive listing of all that is subsumed within the stated category. '*Including*' is a word of expansion rather than one of limitation or restriction. Indeed, the United States Supreme Court, defining 'including' within the context of Section 26 of the Federal Farm Loan Act of 1916, stated that 'the term "including" is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.' * * * " (Emphasis added.)

Therefore, in the present case, we find that the General Assembly's use of "shall include" is only intended to provide a partial listing of those limited branches of medicine or surgery which may be licensed by the board for practice in Ohio. Had it been the intent to exclude naprapathy, as well as the seven other categories no longer specifically enumerated in the statute, the General Assembly could easily have done so by using the necessary exclusionary language which it elected not to do. Therefore, we find defendants' first assignment of error to be without merit and it is overruled.

■ In their second assignment of error, defendants contend that the trial court erred in granting a writ of mandamus since plaintiff was unable to demonstrate any intentional or unreasonable delay in processing his application. A writ of mandamus is an extraordinary remedy which will only be issued if the relator adequately demonstrates " * * * (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law. * * * " *State, ex rel. Harris, v. Rhodes* (1978), 54 Ohio St.2d 41, 42, 8 O.O.3d 36, 37, 374 N.E.2d 641, 641.

In the present case, plaintiff submitted his application to the board in April 1985. The board then began its reviewing process of plaintiff's application and sent a survey form to the Chicago National School of Naprapathy. The survey is designed to determine the standing of schools of limited branches of medicine or surgery prior to admitting applicants completing studies at those schools. After the survey was returned in March 1986, the board had additional questions regarding some of the information provided and sought further information from the school, the state of Illinois and plaintiff. Subsequently, in June 1986, the board elected to table plaintiff's application and has taken no action since that time. It also appears in the record that the normal time for processing such an application varies between approximately six months and one year. We agree with the trial court's determination that the board has unreasonably delayed in processing plaintiff's application and that a writ of mandamus should be issued, not to control the board's discretion in making a decision regarding plaintiff's application, but to compel the board to act to exercise its discretion. *Cleveland, ex rel. Neelon, v. Locher* (1971), 25 Ohio St.2d 49, 54 O.O.2d 189, 266 N.E.2d 831. To the extent that defendants contend that this was not clear upon the face of the trial court's entry, we must disagree. Therefore, defendants' second assignment of error is not well-taken and is overruled.

For the foregoing reasons, defendants' two assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY and BRYANT, JJ., concur.