OPINION
This is a case of first impression brought under the "Taxpayers' Bill of Rights," R.C. 5703.54. The question posed is: Does R.C. 5703.54 provide a separate and distinct remedy for taxpayers that is independent of the Ohio Department of Taxation's administrative remedies? The answer is yes. It is not necessary to exhaust administrative remedies provided under R.C. 5739.01
prior to seeking relief under R.C. 5703.54.
This appeal involves the conduct of defendant-appellee, the Ohio Department of Taxation ("department") and its agent in assessing sales and use taxes, and conducting an audit of plaintiff-appellant, Basic Distribution Corporation, dba Basic Electric Supply ("Basic"). Basic is an Ohio corporation in the business of selling and distributing electrical supplies to construction contractors, industrial manufacturers and maintenance firms for resale or for incorporation into real property. R.C.5739.01 and Ohio Adm. Code 5703-9-14 concern taxable and exempt sales by a construction contractor. The department audited Basic for the first time in April 1994. The department's agent, Jenny L. Gleich, was assigned to conduct the audit of Basic's sales and use taxes and she, with Basic's agreement, used a sample audit procedure. A memorandum agreement regarding the sampling procedure was prepared by the department and presented to Basic. Without entering any objection, Basic executed the agreement.
Basic received a brochure entitled "TAXPAYERS' BILL OF RIGHTS," issued by the department. The brochure discusses audits, the taxpayer's rights during the audit process, assessments, collection remedies, and the availability of a problem resolution officer. The brochure further indicates that: "In 1989, the Ohio General Assembly enacted the Ohio Taxpayers' Bill of Rights which is intended to clarify citizens' rights and obligations as taxpayers in the State of Ohio." Significantly absent from this document is any reference to R.C. 5703.54. There is a hint that the taxpayer "may have legal remedies" if, during an audit, the taxpayer believes that the state of Ohio's tax agent "acted outside the scope of the law"; however, there is no statutory reference.
The department, in the Taxpayers' Bill of Rights brochure, recites that the purpose of an audit is to determine one of three things: Was the tax paid satisfactory? Was the tax paid an overpayment? Was the tax paid an underpayment? In the present case, it appears that in auditing Basic, the department believed that Basic had underpaid its taxes.
During the audit, the department's agent marked certain exemption certificates on file with Basic as "disallowed." R.C.5739.11. Basic was then given an "OFFICIAL NOTICE OF INTENTION TO LEVY A SALES AND USE TAX ASSESSMENT," commonly known as a "sixty-day letter." R.C. 5739.13. The sixty-day period provided for in the "sixty-day letter" is intended to provide the taxpayer with an opportunity to submit additional information showing that the disallowed sales were in fact not taxable. Pursuant to Ohio Adm. Code 5703-9-45(A), a taxpayer may also request an extension of between ninety and one hundred twenty days within which the taxpayer may submit additional information to the department. Basic was unaware that an extension was available and did not seek one.
Following receipt of its "sixty-day letter," Basic sent a letter to its customers requesting exemption certificates; however, the department's agent found Basic's letter to be unacceptable and required Basic to send a second, modified letter to its customers. During the sixty-day period, the department's agent refused to review any customer responses or exemption certificates received by Basic. On August 15, 1994, the sixty-day period expired. Thereafter, the department's agent refused to meet with Basic.
The department then sent Basic a "SUMMARY FOR RECOMMENDING ASSESSMENT: SALES AND USE TAX," containing forty-eight legal size pages of audit work papers and spreadsheets, including untaxed sales by location during the test months along with the computation of tax owed. The cover letter accompanying this summary, stated: "No appeal can be made until you receive the formal notice of assessment." The summary did not identify which exemption certificates or letters of usage were disallowed and it did not identify which cash sales by specific customers were taxable. Such information was necessary to effectively contest the results of the summary and without it Basic could not challenge the assessment.
On November 16, 1994, the department mailed a computer-generated form, entitled "SALES/USE TAX ASSESSMENT" to Basic. This was the formal notice of assessment, although it was not captioned as such. The record on appeal only contains a copy of this form and an examination of it, together with the description provided by the parties, reveals that the original form consisted of three onionskin, half-pages, with printed matter on both sides. The face of the form, in the lower right hand corner, provided: "NOTE IMPORTANT INFORMATION ON REVERSE SIDE OF THIS ASSESSMENT." On the first page it recited the amounts owed by Basic as follows: sales tax: $159,483.64; use tax: $12,673.33; interest: $17,573.37; total assessment: $189,730.34. The reverse side of the form contained the only notice given to the taxpayer regarding the method for challenging the assessment.
Notice of taxpayers' rights, as given by the department, should be plain and obvious, to be consistent with the spirit of R.C. 5703.54. Therefore, notice should fairly and adequately be given so that the taxpayer may pursue any rights available, including a protest, reassessment, or appeal. The format, structure of the words used and the presentation of the message, including the paper on which it is written, should evoke a sense of urgency that would put an ordinarily prudent person on inquiry. The notice should apprise a person whose interests are involved of the procedures for challenging an assessment. To be effective, a notice must be clear and unambiguous. It should be presented with that degree of formality attendant to documents of such importance and the message should be singular in nature.
The primary purpose of the assessment form was to notify the taxpayer that it owed a tax and the amount of that tax. Relegated to a secondary purpose was notification to the taxpayer that a challenge could be made to the tax assessed. By including on the reverse side of the assessment form, the challenge information along with the tax assessment, the significance of the taxpayer's appeal rights was hidden.
Here, the task of the "SALES/USE TAX ASSESSMENT" form was fourfold. First, it was to notify the taxpayer that a tax assessment had been made. Second, it was to notify the taxpayer as to the amount of the tax, along with any interest or penalties assessed. Third, it was to advise the taxpayer that the taxpayer could challenge the assessment. Fourth and finally, it was to notify the taxpayer how to challenge the assessment and the time within which a challenge could be made. Thus, this form was not only notice of the liabilities of the taxpayer, i.e., the tax assessment, but also notice of the taxpayer's rights, i.e., information on the procedure for challenging the assessment.
In examining the assessment form along with the importance of the message intended to be given and the format in which it was given, it becomes evident that it was inadequate to its task. The size and type of the paper used along with the layout of the message was insufficient to put the taxpayer on notice that the taxpayer's appeal rights were triggered by this form and that it contained the only information the taxpayer would receive on how to challenge the assessment.
Taken as a whole, the form failed to adequately notify the taxpayer of its right to challenge the assessment and the procedure for filing a challenge. The message to the taxpayer, on flimsy, half-page paper, in an unassuming format, given on the reverse side of the notice of the amount of the tax, interest and penalty assessment, was not sufficient to put the taxpayer on notice as to the procedure for challenging the assessment. Upon receipt of the tax assessment, a reasonably prudent taxpayer would be impressed by the amount of the assessment, while not looking for other important information, such as the procedure to challenge the assessment.
On January 23, 1995, Basic received a notice from the Ohio Attorney General stating that the assessment became final and that Basic owed tax, penalty and interest totaling $199,593.96, for which a judgment had been filed. Basic began making payments to satisfy that judgment in February 1995, and made its final payment on the assessment in February 1996. Basic then sought a refund.
Agent Gleich was assigned the task of reviewing Basic's refund claim and she requested information from Basic with regard to the disallowed exemption certificates. For the first time, these exemption certificates were identified to Basic as being disallowed. Thereafter, without the department providing any information as to how the refund was determined, a refund of $21,502.25 was made on May 15, 1996. A warrant was issued for $23,141.41 that included post-assessment interest.
Basic contested the refund finding, which was referred to the department's legal division for determination. Thereafter, Basic was given an additional $4,055.17 refund on July 28, 1997. Again, there was no supporting or justifying reason given as to how the refund was calculated. Without information identifying the disallowed exemption certificates, letters of usage, or even the reasons for disallowance, Basic could not challenge the calculations. At this point, Basic chose not to appeal any further.
Basic then filed a complaint under R.C. 2743.02, 2743.03, and 5703.54, seeking findings that the department frivolously disregarded state statutes, administrative rules and its own policies and regulations to the detriment of Basic; and that the department's conduct in conducting the audit was not "substantially justified," as that term is used in R.C. 119.092
and 2335.39. Basic sought to enjoin the department from auditing it further or collecting sales tax by requiring exemption certificates to the exclusion of any other basis; monetary damages in the amount of $200,557.91 or more for losses sustained; reasonable costs and attorney fees as provided for by R.C.5703.54(B)(2); and declaratory relief. Specifically, Basic sought to show that the department violated the Taxpayers' Bill of Rights by using a sample for one tax assessment and then using a full audit for another tax assessment contrary to R.C. 5739.13(A); by failing to advise Basic of available time extensions, or of the procedure for appealing the assessment; by referring the refund matter to the same agent that made the original finding; by failing to identify disallowed exemption certificates, letters of usage, or specific sales by specific customers; by failing to apply construction contract statutes; and by causing Basic to send out two letters to its customers. Thus, the issue presented here is whether the department treated Basic fairly as contemplated under R.C. 5703.54.
The department moved to dismiss Basic's action on the grounds that Basic failed to exhaust its administrative remedies. That motion was denied and a bifurcated trial was held. At the conclusion of trial, the Court of Claims issued a decision in which it concluded that: "Basic failed to exhaust its administrative remedies and that the issues raised by Basic are properly reviewed pursuant to the statutory appeal provisions of R.C. 5717.04." Accordingly, the Court of Claims entered judgment for the department on all of Basic's claims. Basic appeals therefrom raising two assignments of error.
Basic's first assignment of error provides:
 The trial court erred by failing to decide this case on the merits after trial, instead procedurally determining that Appellant failed to exhaust an administrative remedy.
The issue presented under this assignment of error is whether the exhaustion of administrative remedies, as provided in R.C. Chapter 5739, is a condition precedent to bringing an action under the Taxpayers' Bill of Rights Act, R.C. 5703.50, et seq.? The answer is no.
In dismissing Basic's claims on the grounds that Basic had failed to exhaust its administrative remedies, the Court of Claims relied upon Noernberg v. City of Brook Park (1980), 63 Ohio St.2d 26. In Noernberg, the Ohio Supreme Court held that "prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal." Id. at 30. The Noernberg case is factually distinguishable from the case at hand. In Noernberg, a firefighter was denied permission by the Civil Service Commission to move outside the city, and having done so during the pendency of the hearing before the Civil Service Commission was suspended. The firefighter did not appeal from his suspension, but did subsequently appeal the Civil Service Commission's ruling to the court of common pleas. The Noernberg court held that the court of common pleas was without jurisdiction to hear the firefighter's appeal from the Civil Service Commission, as the firefighter had not appealed his suspension. Thus, Noernberg involved the appealability of one administrative determination being dependent upon another related administrative determination having been appealed. In contrast, the instant case involves the argument that Basic's failure to pursue an adminstrative appeal bars it from pursuing a related civil action for damages.
R.C. 5703.54 was intended to provide taxpayers with a separate, independent form of relief that was not previously available. When administrative remedies are provided and the law is clear that the exhaustion of administrative remedies is a condition precedent to the filing of an independent action, there is no question but that the administrative remedies must be exhausted first. However, administrative remedies for a particular administrative agency may be available, such as those provided under R.C. 5717.04, for some forms of relief and an independent action, such as that provided under R.C. 5703.54, may be available for other forms of relief. In such a case, the latter action is not dependent upon the exhaustion of the former.
The taxpayer, when in disagreement with the tax assessment made, may challenge the assessment through the administrative process provided, but it is not required to do so. Should the taxpayer decide to use the administrative process, it is not obligated to exhaust all steps available and may choose to stop at any time with or without reason. Further, the taxpayer may bring an action under R.C. 5703.54, whether it exercised any rights under the administrative procedure or not. A taxpayer suing under R.C. 5703.54 is not seeking a tax refund or reassessment, but is seeking monetary damages from the department for losses sustained as a result of the department's conduct during an audit. Thus, a taxpayer has a right to seek the redress provided under R.C. 5703.54 whenever it believes that the Taxpayers' Bill of Rights has been violated.
The department's position that Ohio's tax statutes are to be strictly construed in favor of taxation and against exceptions from taxation is supported by case law. CantonMalleable Iron Co. v. Porterfield (1972), 30 Ohio St.2d 163, 166. However, the application of the presumption of taxation is not to be equated with negation of responsibility of those charged with the administration of the tax laws to aid the taxpayer or to hide avenues of relief. The department should provide such information to the taxpayer as may be helpful in securing a fair calculation of taxes.
Fairness in government dealings and especially in conducting a tax audit that results in an assessment of tax, penalties and interest, demands that the taxpayer be given sufficient information upon which to test the validity of the assessment and to understand the basis upon which it is founded. Further, the taxpayer should be given clear instructions on how to challenge a tax assessment once made.
It is not enough to merely notify the taxpayer that it has an $189,730.34 tax liability without also identifying how that figure was determined, including which sales were determined to be non-exempt and which certificates were insufficient to warrant a tax exemption. That is simply the first step. The second step is advising the taxpayer what action needs to be taken to challenge the assessment, including notice of time deadlines and the availability of time extensions. The department should provide sample forms, where possible, that are acceptable for this purpose and not require each taxpayer to develop their own forms that may, or may not, be acceptable. The department should encourage and aid the taxpayer in obtaining tax exemption information that is legally acceptable.
The state of Ohio does not want its governmental agencies, such as the department, to collect monies to which it is not rightfully entitled. Thus, the department should aid the taxpayer in making a determination of the amount of tax that is properly due. The department should not sit as a mute observer waiting for the passage of time so that the taxpayer's appeal time runs.
When the department possesses information needed by the taxpayer to challenge the assessment, it is obligated to give the taxpayer notice of its existence so that the taxpayer may review it upon request. Basic discovered that there is a portion of the taxpayer's file that is considered confidential and to which the taxpayer is not given access; however, this "confidential" section apparently includes the auditor's findings as to what is not exempt and why. In order to challenge the auditor's findings, the taxpayer must know on what basis an assessment has been made and the reason the transaction is non-exempt. The tax assessment procedure was never intended to be a confidential one, available only to government agents. To treat it as such, violates notions of due process.
While the burden is on the one claiming an exemption to affirmatively establish the right thereto, id., because all retail sales are presumed taxable, R.C. 5739.02; Union Metal Mfg. Co. v.Kosydar (1974), 38 Ohio St.2d 53, paragraph two of the syllabus, there is no like presumption that an intended audit will result in tax liability.
The department is at a significant advantage over the taxpayer. It is a staffed government agency whose sole mission is to calculate taxes due the state and to collect them. It can autonomously and without the need to justify its actions, select any business for audit. When, as here, the taxpayer is a business for profit, its mission is to do business in such a way that it makes a profit for its shareholders. Upon notice of an intended audit, the business must interrupt its regular business activities to participate in the audit activity. The department has statutory authority, administrative procedures for challenges, definitions as to what is and what is not taxable, tax codes, administrative rules, forms and experienced tax staff at its disposal. The taxpayer must, for the most part, rely on the department to act within the letter and spirit of Ohio's tax code.
Based on the foregoing discussion, Basic's first assignment of error is sustained.
Basic's second assignment of error provides:
 The trial court erred as a matter of law that Basic's claims depend upon the statutory definition only of the adverb "frivolous," to the exclusion of any application of the statutory verb "disregards" or phrase "frivolously disregards."
Basic brought its action against the department as authorized under R.C. 5703.54, which provides, in relevant part, as follows:
 (A) A taxpayer aggrieved by an action or omission of an officer or employee of the department of taxation may bring an action for damages in the court of claims pursuant to Chapter 2734, of the Revised Code, if all of the following apply:
 (1) In the action or omission the officer or employee frivolously disregards a provision of Chapter 5711., 5733., 5739., 5741., or 5747. of the Revised Code or a rule of the tax commissioner adopted under authority of one of those chapters;
 (2) The action or omission occurred with respect to an audit or assessment and the review and collection proceedings connected with the audit or assessment; and
 (3) The officer or employee did not act manifestly outside the scope of his office or employment and did no act with malicious purpose, in bad faith, or in a wanton or reckless manner.
 (B) In any action brought under division (A) of this section, upon a finding of liability on the part of the state, the state shall be liable to the taxpayer in an amount equal to the sum of the following:
 (1) Compensatory damages sustained by the taxpayer as a result of the action or omission by the department's officer or employee;
 (2) Reasonable costs of litigation and attorneys fees sustained by the taxpayer.
 (C) In the awarding of damages under division (B) of this section, the court shall take into account the negligent actions or omissions, if any, on the part of the taxpayer that contributed to the damages, but shall not be bound by the provisions of section 2315.19 of the Revised Code.
* * *
 (F) As used in this section, "frivolous" means that the conduct of the commissioner, or of the taxpayer or his counsel of record satisfies either of the following:
 (1) It obviously serves merely to harass or maliciously injure the state or its employees or officers if referring to the conduct of a taxpayer, or to harass or maliciously injure the taxpayer if referring to the conduct of the tax commissioner;
 (2) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law. [Emphasis added.]
Basic claims that the actions of the department, its officers and employees, "frivolously disregarded" the administrative rules adopted under authority of R.C. Chapter 5739 with respect to the audit and assessment of Basic's business. The Taxpayers' Bill of Rights was adopted by the General Assembly to clarify citizens' rights and obligations as taxpayers. Baldwin's Ohio Tax Law and Rules, Section 3.02, 6. The law provides that taxpayers may request advisory opinions from the commissioner. R.C. 5703.53. It further provides for a problem resolution officer to act as liaison when normal communications break down between the taxpayer and the department. R.C. 5703.54. Finally, the Taxpayers' Bill of Rights provides for a new cause of action available to taxpayers against the department. R.C. 5703.54.
Although the department argues that it did everything it was required to do under the law, it should be noted that, where the average taxpayer such as Basic is unable to understand the procedure, it must be assumed that either the method of relaying the information required to be provided by the department or the substance of the information provided by the department is, in fact, insufficient.
The statute refers to an "action or omission of an officer or employee" of the department of taxation. R.C.5703.54(A). Thus, a taxpayer who has been aggrieved by the conduct (action or omission) of an agent (officer or employee) may bring an action for damages in the Court of Claims if three requirements are met:
First, the department must have "frivolously disregarded" a provision of the Ohio Revised Code or a rule of the tax commissioner. R.C. 5703.54(A)(1). R.C. 5703.54(F) defines "frivolous" for purposes of R.C. 5703.54 to mean conduct that "obviously serves merely to harass or maliciously injure," or that is "not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." Black's Law Dictionary (6 Ed. 1990) 472, and 668, respectively defines "disregard" as "[t]o treat as unworthy of regard or notice; to take no notice of; to leave out of consideration; to ignore; to overlook; to fail to observe[,]" and "frivolous" as "[o]f little weight or importance." Thus, to "frivolously disregard" can be said to ignore without reason.
Here, the department "frivolously disregarded" standard procedures by mandating the use of a sample; failing to offer a full audit; unreasonably disallowing exemption certificates without identifying those disallowed or the reason for their disallowance; projecting the sample result over the entire audit period contrary to R.C. 5739.13(A); failing to assist Basic in drafting an acceptable letter to request additional information from customers and refusing to review responses during the statutory period; providing misinformation with respect to a taxpayer's right to appeal; failing to advise Basic that it had a right to an additional ninety to one hundred twenty days extension beyond the initial sixty-day period; having the same agent review her own work when Basic applied for a refund; and providing a reduction in the assessment without providing any basis for the reduction.
The first requirement has been met.
Second, the taxpayer must show that the department's "frivolous disregard" occurred during an audit, assessment, review or related collection proceedings. R.C. 5703.54(A)(2).
The Court of Claims stated in its decision that Basic's "cause of action arose from a tax audit of [its] business records conducted by [the department's] agent, Jenny Gleich." The second requirement has been met.
Third, the taxpayer must show that the department's agent was not acting "manifestly outside the scope of his * * * employment and did not act with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 5703.54(A)(3). The record contains no evidence whatsoever which would support a finding that, in auditing Basic, agent Gleich was acting manifestly outside the scope of her employment, or maliciously, in bad faith or in a wanton or reckless manner. The third requirement has been met.
Basic's second assignment of error is sustained.
We hold that R.C. 5739.01 provides an independent cause of action to Ohio taxpayers, and that the institution of such actions is not dependent upon the taxpayer having exhausted his administrative remedies in the related tax matter. Basic, as an audited taxpayer, could bring this independent action having met the three requirements outlined in the statute.
Therefore, the trial court erred in holding that Basic's failure to exhaust its administrative remedies prohibited it from pursuing an R.C. 5703.54 action. Pursuant to R.C. 5703.54(B), "upon a finding of liability on the part of the state, the state shall be liable to the taxpayer" for compensatory damages, reasonable costs of litigation and attorney fees. R.C.5703.54(B)(1) and (2). Additionally, the court is required to "take into account the negligent actions or omissions, if any, on the part of the taxpayer that contributed to the damages." R.C.5703.54(C).
The judgment of the Ohio Court of Claims is reversed. This matter is remanded to the trial court for proceedings consistent with this court's ruling, which may include a rehearing for proof of damages as well as the other statutory remedies sought. The court should consider the following factors in an action brought under R.C. 5703.54. During the department's audit of Basic, did the department violate Basic's rights as a taxpayer? R.C. 5703.54. If the answer to this question is in the affirmative, then the court shall further consider whether Basic acted negligently during the audit to its own detriment. R.C.5703.54(C). After considering the foregoing, what amount of damages, if any, is Basic entitled to receive? Should the court determine that a violation of R.C. 5703.54 was committed by the department, it shall also determine the amount of costs and attorney fees to be awarded to Basic. R.C. 5703.54(B)(2).
Finally, under the facts presented here, the court shall determine whether or not Basic's claim for an injunction is warranted.
DESHLER and KENNEDY, JJ., concur.
GEORGE, J., retired, of the Ninth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.